**J. D. PFLAUMER, INC., and
Pflaumer Realty Co., Inc.**

v.

**UNITED STATES DEPARTMENT
OF JUSTICE et al.**

Civ. A. No. 77–1723.

United States District Court,
E. D. Pennsylvania.

May 18, 1978.

Patrick W. Kittredge, Bruce L. Thall, Philadelphia, Pa., for plaintiffs.

Elizabeth Gere Whitaker, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

VanARTSDALEN, District Judge.

On January 20, 1977, the plaintiff, Pflaumer Realty Co., Inc. (Pflaumer), was served with a grand jury subpoena requiring the production of certain of its books and records. Rather than requiring the formal production of these documents, Donald F. Manno, the Assistant United States Attorney in charge of the grand jury investigation, agreed to permit the records to remain in Pflaumer's custody at its registered office at 1342 N. Howard Street, Philadelphia, Pennsylvania, upon the condition that the federal agents conducting the investigation be permitted to review the subpoenaed documents whenever necessary.[1]

On February 25, 1977, the plaintiff, J. D. Pflaumer, Inc. (Pflaumer),[2] whose principal place of business is also located in the same premises occupied by Pflaumer Realty, Inc., was served with a grand jury subpoena requiring the production of certain of its books and records. Again, Manno agreed to allow the records to remain in Pflaumer's custody upon the condition that the agents be permitted to review them, when necessary, at Pflaumer's offices.[3]

On various occasions between January and May of 1977, agents of the Federal Bureau of Investigation (FBI) and the Bureau of Alcohol, Tobacco and Firearms (ATF) visited the plaintiffs' business premises and were permitted to review the subpoenaed documents in accordance with the agreement outlined above.

On May 13, 1977, in the course of reviewing some of these documents, ATF Inspector Richard L. Bushman (Bushman) telephoned Manno and advised him of his belief that certain of the documents had been altered.[4] Based on this information, Manno directed Bushman and a number of other agents to seize the subpoenaed documents. In accordance with that directive, Bushman and seven other agents, four of whom are, as yet, unidentified, entered the plaintiffs' business premises and demanded the production of the subpoenaed documents, all of which were turned over by the plaintiffs' employees. After supplying the plaintiffs with an itemized receipt for the documents, the agents left the premises and transported the documents to the offices of the Philadelphia Strike Force.[5]

At no time prior to seizing these documents did the defendants secure a warrant and although it is not entirely clear from the present record whether the plaintiffs, through their agents or employees, consented to this seizure,[6] it is apparent that counsel for the plaintiffs advised the defendants by telephone during the course of the search that they were in violation of the plaintiffs' fourth amendment rights.

1. This agreement was memorialized in a letter dated January 28, 1977 from Pflaumer's counsel to Manno. A copy of the letter is attached to the complaint as exhibit "A". The existence of this agreement is not disputed, but its legal ramifications are. *See* Manno's affidavit attached as exhibit "A" to defendants' motion.

2. Both plaintiffs will be referred to collectively as Pflaumer as there is no need to differentiate, in the course of this opinion, between them.

3. *See* note 1, *supra.*

4. Whether any of the documents were, in fact, altered is a factual question which is disputed by the plaintiffs. It is, however, unnecessary at this stage of the litigation to resolve this question. *See* note 18, *infra.*

5. Asst. U.S. Attorney Manno is assigned to the Organized Crime and Racketeering Section of the United States Department of Justice (Phila. Strike Force) and the grand jury investigation was being conducted pursuant to that office's authority.

6. The defendants assert that the plaintiffs' employee responsible for the custody of these records consented to the search and seizure. Plaintiffs have alleged that the agents were repeatedly asked to leave the premises. Although the issue of consent goes directly to the question of whether defendants' actions violated plaintiffs' rights, it is clearly a disputed factual question.

The plaintiffs immediately filed this action and sought a temporary restraining order requesting the return of these documents. A hearing was held on May 18, 1977, at which all parties were represented and an order was entered directing that the documents and copies thereof be delivered to the custody of the Clerk of Court and that they remain impounded until a hearing could be held on the plaintiffs' motion for a preliminary injunction or unless both parties agreed otherwise. Prior to the hearing on the motion for a preliminary injunction, the government agreed to return the documents and all copies. Accordingly, the motion was denied on May 27, 1977 as moot.

The defendants have now filed a motion to dismiss the complaint for failure to state a cause of action and/or in the alternative a motion for summary judgment in favor of the individual and government agency defendants.

### I. *Motion to Dismiss the Complaint for Failure to State a Cause of Action.*

The plaintiffs filed this action seeking both injunctive relief and monetary damages for the violation of their fourth amendment rights resulting from the defendants' alleged warrantless seizure of their books and records. Count I of the complaint asserts a cause of action under § 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983. Count II alleges that the defendants "conspir[ed] for the purpose of depriving plaintiffs of the privileges secured to them by the Constitution of the United States," and asserts a cause of action under § 2 of the Civil Rights Act of 1871, 42 U.S.C. § 1985. Count III alleges that the defendants "[had] knowledge of the wrongs conspired to be done . . . and, having power to have prevented the commissions of the wrongs . . . permitted the illegal search and seizure to occur" and asserts a cause of action under § 6 of the Civil Rights Act of 1871, 42 U.S.C. § 1986. The final count in the complaint asserts a cause of action directly under the fourth amendment relying upon the Supreme Court's decision in *Bivens v. Six Unknown Named Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Plaintiffs rely upon the general federal question jurisdiction 28 U.S.C. § 1331(a)[7] and the jurisdictional counterpart of the Civil Rights Act of 1871, 28 U.S.C. § 1343(3).

### 1. *Section 1983*

Section 1 of the Civil Rights Act codified as 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

It is clear from the express language of this statute that it provides an aggrieved individual with a cause of action to redress a civil rights violation caused by actions taken under the color of state law. In this case, the defendants are all federal officials whose actions were taken pursuant to their federal authority. Section 1983 is an improper basis upon which to assert a cause of action for an alleged civil rights violation perpetrated under the color of federal law. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Paton v. La Prade,* 524 F.2d 862 (3d Cir. 1975); *Bethea v. Reid,* 445 F.2d 1163 (3d Cir. 1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 747, 30 L.Ed.2d 749 (1972).

Accordingly, plaintiffs claim under this section of the Civil Rights Act will be dismissed.

### 2. *Section 1985*

The plaintiffs have failed to delineate upon which of the three subsections of § 1985 they place their reliance. It is apparent, however, from a reading of the

---

7. Plaintiffs have alleged the requisite jurisdictional amount.

statute that only subsection (3) is arguably relevant.[8] That section provides, in pertinent part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

In *Bethea v. Reid, supra* at 1164, the Court of Appeals for the Third Circuit affirmed without extensive elaboration the district court's dismissal of a complaint against federal officials for the alleged use of perjured testimony in a criminal trial against the plaintiff and for violations of his fourth amendment rights, on the grounds that 42 U.S.C. §§ 1983 and 1985 do not provide a cause of action against federal officials acting under color of federal law. The more recent decision by the Court of Appeals in *Brawer v. Horowitz,* 535 F.2d 830 (3d Cir. 1976), suggests, however, that 42 U.S.C. § 1985 reaches even federal action. *See Jennings v. Shuman,* 567 F.2d 1213, 1221, n. 12 (3d Cir. 1977).[9] This latter decision is in keeping with the Supreme Court's holding in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1970), that § 1985 is not limited by the state action requirement of § 1983 and reaches even conspiracies among private individuals which violate this section.

*Griffin, supra,* also held, however, that [t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class based, invidiously discriminatory animus behind the conspirators' actions. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.

*Id.* at 102, 91 S.Ct. at 1798 (footnote omitted). *Jennings v. Shuman, supra.*

Under this interpretation, it is clear that plaintiffs have failed to state a cause of action cognizable under this section of the Civil Rights Act. Accordingly, Count II of the complaint will be dismissed.

### 3. Section 1986

This section provides, in pertinent part:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . . .

---

**8.** At first glance, subsection (2) of § 1985, generally proscribing conspiracies aimed at the obstruction of justice and the influencing of grand or petit juries, may seen relevant. However, a closer reading of that subsection in conjunction with its recent interpretation by the court of appeals in *Brawer v. Horowitz,* 535 F.2d 830 (3d Cir. 1976), makes it clear that this section is aimed at conspiracies to obstruct justice which *directly* affect, by intimidation, retaliation or positive inducements, parties, witnesses or grand or petit jurors in any court of the United States. The sole conspiracy allegation in Count II (quoted above) is wholly insufficient to state a cause of action under § 1985(2) and the language of that allegation seems to rely upon the wording of § 1985(3).

**9.** *Brawer* was a civil rights action pursuant to 42 U.S.C. § 1985(2) in which the plaintiff sought damages against a federal prosecutor and witness for allegedly conspiring to use perjured testimony against him in his criminal trial on federal charges. The court upheld the district court's dismissal of the complaint but never questioned the applicability of § 1985 to actions under the color of federal law.

Having failed to state a claim under § 1985, *a fortiori*, they have failed to state a claim under § 1986 and Count III of the complaint will likewise be dismissed. *Bethel v. Jendoco Construction Corporation*, 570 F.2d 1168 (3d Cir. 1978); *Brawer, supra.*

### 4. *Fourth Amendment*

■ Count IV of the complaint alleges a cause of action directly under the fourth amendment with jurisdiction asserted pursuant to 28 U.S.C. § 1331. It is now well established that an implied cause of action directly under the fourth amendment is the proper method of seeking redress for alleged violations by federal officials of the rights guaranteed by that amendment. *Bivens, supra; Paton v. La Prade, supra.* Moreover, recognizing that a Bevins claim is the counterpart of a § 1983 civil rights action, where the defendants are federal officials, the courts have generally relied upon the principles developed in the caselaw applying § 1983 to establish the outer perimeters of a *Bivens* claim. *See Helstoski v. Goldstein*, 552 F.2d 564 (3d Cir. 1977); *Brawer, supra; Paton, supra.*

Having sufficiently alleged a violation of their fourth amendment rights, the plaintiffs will be permitted to proceed on Count IV of the complaint.

### 5. *Injunctive Relief*

In addition to the plaintiffs' claim for monetary damages they have sought injunctive relief requiring the return of all documents seized and any copies thereof and an order permanently enjoining the defendants from entering their business premises without first securing a judicial warrant.

■ As to the first portion of this requested relief, both parties agree that the documents and all copies have been returned to the plaintiffs and this claim is, therefore, moot. The second portion of the requested relief seeks an injunction against future action by these defendants.

■ Aside from the fact that the grand jury subpoenas requiring the production of these documents are still in effect, for which the government, as I see it, may still seek compliance through appropriate court proceedings, the requested injunctive relief pertaining to unwarranted seizure of these documents in the future, would be inappropriate. The complaint alleges no basis upon which to establish "the present existence of an actual threat" that the action sought to be enjoined will come about. *Holiday Inns of America, Inc. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969), *quoted in Raitport v. Provident National Bank et al.*, 451 F.Supp. 522 (E.D.Pa.1978). Injunctive relief "may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights . . . ." *Id.*

At best, plaintiffs seek an injunction against a future violation of their rights by these defendants, based solely on the allegation that such action has occurred in the past. There is no assertion of any continuing violation or that these defendants have, in any way, threatened the action which the plaintiffs seek to enjoin. The plaintiffs' claim for equitable relief will be dismissed.

### II. *Motion for Summary Judgment in Favor of the Individual and Agency Defendants.*

The plaintiffs have brought this action not only against the individual prosecutor and government agents allegedly responsible for the seizure of these documents, but also against the United States and certain of its agencies, in particular, the Department of Justice, Organized Crime and Racketeering Section, and the Department of Treasury, Bureau of Alcohol, Tobacco and Firearms. These various defendants have moved for summary judgment, part of which will be granted and part of which will be denied. *See* Rule 56(d), Fed.R.Civ.P.

### 1. *The United States and Its Agencies*

■ Absent explicit Congressional authorization, a governmental agency cannot be sued *eo nomine*. *Blackmar v. Guerre*, 342 U.S. 512, 515, 72 S.Ct. 410, 96 L.Ed. 534 (1952); *Smallwood v. United*

**1132**

*States,* 358 F.Supp. 398, 407 (E.D.Mo.1973). Congress having nowhere declared that the Organized Crime and Racketeering Section of the Department of Justice or the Bureau of Alcohol, Tobacco and Firearms of the Department of Treasury are suable entities, it is apparent that no cause of action exists against these defendants. *Castleberry v. Alcohol, Tobacco and Firearms Div.,* 530 F.2d 672, 673 n.3 (5th Cir. 1976).

To the extent that the plaintiffs have sought to name the United States, through its agencies and/or officers, as a party defendant, such a claim, at least as to compensation for monetary damages, is barred by the doctrine of sovereign immunity.[10] *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Larson v. Domestic & Foreign Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). Plaintiffs have cited no statutory authority permitting this type of action directly against the United States and in the absence of such explicit waiver of its sovereign immunity, the United States is not subject to suit.[11] This does not, however, bar a claim against the individual defendants who are not entitled to assert the doctrine of sovereign immunity in defense of an action alleging they violated the plaintiffs' constitutional rights. If, in fact, the individual defendants acted in an unconstitutional manner *a fortiori* they acted outside the scope of their authority and therefore do not enjoy its absolute immunity. *Larson, supra.*

The claim against the United States and the named governmental agencies to recover money damages for the unconstitutional actions of the named individual defendants will be dismissed.

### 2. *The Individual Defendants*

The defendants have raised the question of official immunity as a defense to the plaintiffs' claim for monetary damages.[12] They argue that as government officials required to exercise a degree of discretion when acting within the scope of their authority, they enjoy an official immunity from any civil liability resulting from the performance of their duties. Specifically, defendant Manno claims an absolute, quasi-judicial immunity as an Assistant United States Attorney and the defendant federal agents claim a coextensive derivative immunity for their actions allegedly taken at defendant Manno's directions. Responding, the plaintiffs argue that Manno, although a federal prosecutor, was not acting pursuant to his role as an advocate, entitling him to absolute immunity, but rather in his role as an investigator clothed with, at most, only the qualified immunity enjoyed by police officers.

The question is an important one because the existence of an absolute immunity defeats the suit at the outset whereas qualified immunity requires an analysis of the circumstances and motivations surrounding

10. Whether injunctive relief would be available against the United States, through its officers and/or agencies, for alleged prospective unconstitutional action is a more difficult question which need not be resolved in light of the dismissal of the plaintiffs' claim for such relief. *See Larson v. Domestic Foreign Corp.,* 337 U.S. 682, 704, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).

11. Plaintiffs do not rely upon the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* which requires the satisfaction of certain prerequisites prior to filing suit. This statute is the exclusive waiver of sovereign immunity for actions sounding in tort against the United States, its agencies and/or officers acting within their official capacity.

12. The defense of official immunity is based primarily upon recognition of the fact that executive officials are oftentimes required to ex-

ercise a degree of discretion in the course of performing their official duties and that immunizing them from civil liability for discretionary actions within the scope of their authority protects the important decision making process essential to effective government. *Scheuer v. Rhodes,* 416 U.S. 232, 240, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A second type of immunity is derived from recognition of the fact that the sovereign can only act through its agents and where the suit, nominally against the official, is in effect a suit attacking the actions of the sovereign, then the official is entitled to exercise the sovereign's immunity. *Larson, supra.* The individual defendants rely upon the first type of immunity and, under these facts, would not be entitled to the latter type. *See* Part II(1), *supra.*

the defendants' actions, as established by the evidence at trial. *Imbler v. Pachtman*, 424 U.S. 409, 419 n. 13, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

### A. The Prosecutor

The Supreme Court's decision in *Imbler v. Pachtman, supra*, confronted the question of whether a state prosecutor was entitled to official immunity from civil liability for allegedly using false testimony and failing to disclose material evidence in a criminal trial which resulted in the plaintiff's conviction.[13] The Court's examination of the issue followed a two-step analysis involving first, an inquiry into the immunity historically accorded prosecutors and second, a determination of whether the same considerations of public policy that underlie the common law rule apply with equal force to a civil rights action.[14] Having determined that prosecutors were traditionally accorded absolute immunity from common law tort actions arising from either their initiation or presentation of a criminal prosecution, *id.* at 421–424, 96 S.Ct. 984, and that the same public interest in the "vigorous and fearless performance of the prosecutor's duty" supporting that grant of immunity, *id.* at 427, 96 S.Ct. at 993, countenanced its application to civil rights actions, *id.* at 424–429, 96 S.Ct. 984, the Court concluded

> that respondent's activities were intimately associated with the judicial phase of the criminal process, and thus were functions to which the reasons for absolute immunity apply with full force.

*Id.* at 430, 96 S.Ct. at 995 (footnote omitted). The Court carefully limited this holding and concluded the opinion with the following proviso:

**13.** Although *Imbler* was a § 1983 action against a state prosecutor, it is equally applicable to this *Bivens* action against a federal prosecutor. *See* Part I(4), *supra*.

**14.** The Court rejected petitioner's argument that § 1983 evidenced an intent on the part of the Congress to abrogate the common law immunities afforded government officials. *Imbler, supra* at 417–419, 96 S.Ct. 984.

**15.** As the Supreme Court noted in *Imbler, supra* at 431 n. 33, 96 S.Ct. 984 the distinction between the prosecutor's various functions is oftentimes hazy. The facts of this case suggest

> We have no occasion to consider whether like or similar reasons require immunity for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate. We hold only that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983.

*Id.* at 430–431, 96 S.Ct. at 995 (footnotes omitted).

The allegations of this case rest squarely within that area which the Court "had no occasion to consider." Clearly, if defendant Manno's alleged actions in this matter were such as to come within his role as an advocate, then the absolute immunity accorded by *Imbler* would dictate the dismissal of this action as to him. It is my conclusion, however, that the gathering of evidence for the purpose of supporting the presentation of an indictment to the grand jury, at least in the context of this case, is more a kin to the prosecutor's role as an investigator and therefore outside the quasi-judicial phase of his duties.[15] *See Hampton v. City of Chicago*, 484 F.2d 602 (7th Cir. 1973) (Stevens, J.); *Burkhart v. Saxbe*, 397 F.Supp. 499, 503 n.4 (E.D.Pa.1975).

Characterizing Manno's alleged action in this case as investigative rather than advocatory, requires a determination of the degree to which a prosecutor functioning in his investigative capacity is entitled to immunity in a civil rights action. Although the Court of Appeals for this Circuit has considered the question of prosecutorial im-

that plaintiffs' claim is based on the manner in which the evidence was obtained rather than the way in which it was subsequently used. The obtaining of evidence is clearly an investigative function whereas the use of evidence, under most circumstances, would fall within the advocacy function. Moreover, the fourth amendment, upon which plaintiffs rely, protects the individual's right of privacy from intrusion by government officials and is only tangentially related to the trial process through the judicially fashioned exclusionary rule.

munity on three occasions since *Imbler*, none of those cases has reached the exact issue now before this Court.[16] *See Jennings v. Shuman, supra* at 1221–1222 (issue noted but not considered by district court, case remanded); *Helstoski v. Goldstein, supra* at 566 (even assuming absolute immunity applies to investigative function, complaint alleged deliberate conduct outside the proper performance of prosecutor's duty suggesting at most a qualified immunity); *Brawer v. Horowitz, supra* at 834 (federal prosecutor acting in advocacy role is entitled to absolute immunity recognized in *Imbler*). In *Briggs v. Goodwin*, 569 F.2d 10, 13–25 (D.C.Cir.1977), however, the Court of Appeals for the District of Columbia undertook an exhaustive analysis of this precise issue, albeit in the context of a factual setting somewhat different from the present case. I find that analysis to be persuasive and will therefore follow its precepts. *See D'Iorio v. County of Delaware*, 447 F.Supp. 229 (E.D.Pa. filed February 22, 1978) (Lord, Ch.L.).

██ The prosecutor's absolute immunity is derived from a recognition of the fact that the same policy considerations supporting judicial immunity are applicable with equal force to the prosecutor functioning as an integral part of the judicial process. *Imbler* identified those considerations as including (1) the diversion of the prosecutor's energies away from the performance of his public duties in order to defend against oftentimes unfounded civil rights charges, *id.*, 424 U.S. at 425, 96 S.Ct. 984; (2) the biasing of the prosecutor's decision-making process, which almost always provides fertile ground for colorable constitutional claims, by the threat that personal liability may result from a wrong decision, *id.* at

426, 96 S.Ct. 984; and (3) the fact that the prosecutor often forced to act under considerable constraints of time and information would be less able than other executive officials to satisfy the standards of only a qualified immunity, *id.* at 425, 96 S.Ct. 984.

Although these same considerations might arguably support a contention that the prosecutor should be clothed with absolute immunity even when functioning in an investigative capacity, the Court in *Imbler* further clarified the thrust of these considerations when it pointed to the fact that the denial of absolute immunity for prosecutorial actions "intimately associated with the judicial phase of the criminal process," *id.* at 430, 96 S.Ct. at 995, would adversely affect "the functioning of the criminal justice system." *Id.* at 426, 96 S.Ct. at 993. The Court hypothecated that subjecting prosecutors to even the threat of personal liability would tend to create a systematic bias causing them to hesitate in the performance of their quasi-judicial responsibilities. This could well manifest itself in the decision not to prosecute except on only the strongest of evidence or to refrain from producing relevant evidence before the jury solely because the uncertainty of its source or correctness might later support a colorable cause of action for damages. *Id.* at 426, 96 S.Ct. 984. Furthermore, knowledge on the part of the judiciary that the prosecutor could be held personally liable for trial errors or mistaken judgment could infect the entire post trial and appellate decision-making process as well as dampen the prosecutor's duty to inform the court of significant exculpatory evidence. *Id.* at 427 and n. 25, 96 S.Ct. 984.

These potential dangers are not as prevalent where the prosecutor is functioning in his role as an investigator. In performing

**16.** Prior to *Imbler*, the Court of Appeals in *Bauers v. Heisel*, 361 F.2d 581 (3d Cir. 1966) (en banc), held that despite the fact that prosecutors sometimes function as investigators, their primary responsibilities are essentially judicial in nature entitling them to the same absolute immunity accorded members of the judiciary. In *Cambist Films Inc. v. Duggan*, 475 F.2d 887, 888–889 (3d Cir. 1973), the Court expressly rejected any distinction between the prosecutor's functions as requiring a differing

degree of immunity and accorded the prosecutor absolute immunity from civil liability in a common-law tort action alleging an illegal seizure of plaintiff's allegedly obscene films. Given the Supreme Court's analysis in *Imbler* it is doubtful that the Court of Appeals would follow its decision in *Cambist* without a more in-depth analysis of the interests supporting absolute versus qualified immunity vis-a-vis the prosecutor's differing functions.

these· duties the prosecutor like the police officer is responsible for ferreting out evidence of criminal activity. This function, performed outside the setting and structure of the courtroom's controlled atmosphere, is less affected by the additional protection afforded the individual's civil rights by allowing only qualified as opposed to absolute immunity.

There would seem to be no sound reason for extending the prosecutor's absolute, quasi-judicial immunity beyond the limited sphere recognized in *Imbler*. Moreover, to extend it to the investigatory aspects of the prosecutor's duties would permit the prosecutor an absolute immunity for precisely the same conduct for which police officers have traditionally been entitled to only a qualified immunity.[17] There is simply no justifiable basis for recognizing such a distinction.

■ Defendant Manno, based on the allegations of this case, is entitled to only a qualified immunity defense, requiring him to establish that his alleged action in directing the seizure of the plaintiffs' records was done in the good faith belief as to its lawfulness and that such a belief was reasonable under all of the circumstances then existing. *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Skehan v. Board of Trustees*, 538 F.2d 53, 62 (3d Cir.) (en banc), *cert. denied*, 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976). The presence of this defense, in the context of the present record, establishes a genuine dispute as to a material issue of fact precluding summary judgment.[18] *But cf. Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55

L.Ed.2d 24 (1978) (Held state prison official entitled to qualified immunity as a matter of law in the particular factual context of that case. Entirely distinguishable on its facts from the present case).

### B. *The Agents*

■ The defendants, ATF and FBI agents, claim they are entitled to the same degree of immunity as that accorded to defendant Manno because they were merely carrying out his orders. *See G. M. Leasing Corp. v. United States*, 560 F.2d 1011 (10th Cir. 1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1485, 55 L.Ed.2d 516 (1978). Of course, having determined that defendant Manno is entitled to only a qualified immunity, the same as investigative agents, resolution of the agents' claim of derivative immunity is unnecessary. Federal agents, like local police officers, enjoy only a qualified immunity. Therefore, it is irrelevant whether the agents' immunity is derived from that of defendant Manno or based on the immunity traditionally accorded police officers. In either event they are entitled to only a defense of qualified immunity.

■ Two other issues have been raised with respect to two of the named agents. ATF Inspector Robert G. McCorkle (McCorkle) urges, based upon his affidavit (Exhibit "D" to Defendants' Motion for Summary Judgment), that the plaintiffs' claim against him should be dismissed on the grounds that he was not personally involved in the seizure of these documents nor even present at the time they were seized. Plaintiffs do not dispute this assertion but simply argue that they should be permitted, through the process of discovery, to determine the extent, if any, of McCorkle's in-

**17.** In *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1966), the Court held that police officers were only entitled to the same qualified immunity in civil rights actions that they enjoyed in common law tort actions.

**18.** It is undisputed that the seizure of these documents was effectuated without a warrant and it is clear that a subpoena duces tecum does not confer a right to seize the subpoenaed documents. *See Mancusi v. De Forte*, 392 U.S. 364, 371, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968). However, by reason of the claimed agreement

between the parties that the documents be retained in plaintiffs' custody subject to inspection and use at anytime by defendants and/or the grand jury, the taking of the documents by defendants may not have been an illegal seizure and in view of the circumstances, including the suspected alteration of the documents, exigent circumstances may have obviated the necessity for a warrant. In any event, these factors, may, upon full development of the facts give rise to the "good faith" defense applicable where a qualified immunity exists.

volvement. I believe the more appropriate procedure is to dismiss the complaint against McCorkle without prejudice to its reinstatement, if and when the plaintiffs are able to establish some basis for their claim.

FBI Agent Charles L. Owens, a named defendant, moved to have the complaint dismissed on the grounds that he was not personally served as required by Rule 4(d)(1) of the Federal Rules of Civil Procedure. He claims that the plaintiffs mistakenly served the complaint upon one Lawrence G. Owens, another agent of the FBI. The plaintiffs, in their response to the defendants' motion, have represented that service has now been effectuated by personally serving the defendant Charles L. Owens with a copy of the complaint. *See* plaintiffs' brief filed September 12, 1977, p. 23. Based upon this representation, defendant Owens' motion will be denied.

Finally, defendants argue that the failure, at this stage of the litigation, to identify the four unknown agents named as defendants in this case requires that the complaint be dismissed as to them. This contention is obviously specious and will be denied. Plaintiffs sought this information by way of discovery. Defendants shall produce the names of the agents who were present at the time the plaintiffs' records were seized.