The PEOPLE of the United States of America ex rel. Arthur SNEAD, Daniel Snead, and 9-year-old Darryl Snead, Innocent Citizens of the United States, Victimized by a Frame-Up Prosecution by the Government of the United States, Plaintiffs,

v.

Hon. Ronald M. KIRKLAND and Carlos Sabinson, William T. Thees, Paul Nolan, George Bramley, John E. Bramley, and Daniel Kingston, Esquires, Special Agents, Hon. David Marston, Esq., Former United States Attorney for the Eastern District of Pennsylvania, Hon. Norman Greenspan, Louis J. Ruch, David Strawbridge, and Frank Sherman, Esquires, Assistant United States Attorneys, Eastern District of Pennsylvania, Hon. Austin McGreal, Nicholas J. Lisi, William Morrow, Bennett Weinstock, and David H. Kubert, Esquires, Defense Trial Attorneys, Bar of the United States District Court for the Eastern District of Pennsylvania, Hon. J. William Ditter, Jr., Donald W. VanArtsdalen, Alfred L. Luongo, and Herbert A. Fogel, Judges, United States District Court for the Eastern District of Pennsylvania, Michael F. McNamee, Gary Crompton, and Samuel E. Doman, Bank Robbers, Informers-Perjurors and Collaborators for the Federal Bureau of Investigation, Department of Justice, et al., Defendants.

Civ. A. No. 78–2661.

United States District Court,
E. D. Pennsylvania.

Dec. 27, 1978.

Arthur Snead, *pro se.*

Peter F. Vaira, U. S. Atty., and Joseph M. Gontram, Asst. U. S. Atty., Philadelphia, Pa., for named defendants who are Special Agents of the Federal Bureau of Investigation, former U. S. Atty., and Asst. U. S. Attys., and U. S. Dist. Judges.

Robert S. Esposito, Philadelphia, Pa., for defendant Austin J. McGreal.

Nicholas J. Lisi, pro se.

William Morrow, pro se.

David H. Kubert, pro se.

Thomas J. Ziomek of White & Williams, Philadelphia, Pa., for defendant Bennett P. Weinstock.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

On July 21, 1978, Arthur Snead, a federal prisoner incarcerated at Lewisburg Penitentiary, instituted this *pro se* action [1] by filing three documents entitled: (1) "Action for Mandamus to Show Cause Why Frame-up Bank Robbery Conviction Should Not Be Vacated, Set Aside and Dismissed with Prejudice Against Renewal", (2) "Complaint and Petition For Order To Show Cause", and (3) "Special Declaration of Complete and Total Innocence".[2] The named plaintiffs are Arthur, Daniel and Darryl Snead but Arthur was the only plaintiff who signed the pleadings.[3] The suit names twenty-four individual defendants. Among the defendants are seven Special Agents of the Federal Bureau of Investigation,[4] one former United States

---

1. Chief Judge Latchum of the United States District Court for the District of Delaware was designated and assigned, pursuant to 28 U.S.C. § 292(b), by Chief Judge Collins J. Seitz to hear and dispose of this case.

2. Docket Item 1.

3. *Id.*

4. The Special FBI agents are: Ronald M. Kirkland, Carlos Sabinson, William T. Thees, Paul Nolan, George and John E. Bramley and Daniel Kingston.

Attorney and four Assistant United States Attorneys,[5] five defense trial attorneys,[6] four District Judges of the United States District Court for the Eastern District of Pennsylvania,[7] and three "Bank Robbers, Informers-Perjurors and Collaborators".[8]

All of the defendants, except the so-called bank robbers, have appeared and moved to dismiss the action for various reasons. It is these motions which are now before the Court for disposition. However, since matters outside the pleadings have been presented by the parties and considered by the Court, a few of the motions to dismiss will be treated as motions for summary judgment. Rule 12(b), F.R.Civ.P.

Also because this is an action brought *pro se* by a layman, the Court will consider the initial three documents filed by Arthur Snead as a complaint within the meaning of Rule 7(a), F.R.Civ.P. While the complaint is unduly prolix, containing a complex mixture of allegations, evidence, conclusions, argument, points, issues presented under various appellations as "motions," "complaint," "petitions," "special declarations" and "special propositions," it appears after an over-all reading to allege a conspiracy on the part of all twenty-four defendants to deprive the plaintiffs of their civil rights by an alleged plan or scheme to arrest, try and convict Arthur and Daniel Snead for several bank robberies in which they contend they were not involved. Thus, the complaint alleges that the FBI agents, the prosecuting and defense attorneys, the trial judges and the informer-witnesses all conspired to "frame" Arthur and Daniel Snead on bank robbery charges of which they are totally innocent.[9] In addition the complaint

alleges that Darryl Snead, Arthur's nine year-old son, was assaulted and injured by the defendant Kirkland and other FBI agents on October 20, 1976 when they arrived at the Snead home to arrest Arthur Snead. The complaint seeks (1) an order requiring the defendants to take lie detector tests, voice and stress analysis tests, (2) a writ of mandamus, presumably directed to the convicting trial courts, ordering that their bank robbery convictions be vacated, set aside and dismissed with prejudice against any renewal, and (3) an award of fifty million dollars in compensatory and punitive damages. Jurisdiction is alleged to exist by virtue of 28 U.S.C. § 1331(a); 28 U.S.C. § 1343(2), (3) & (4); 28 U.S.C. § 1651; 42 U.S.C. § 1985(2) & (3); 42 U.S.C. § 1986; and 18 U.S.C. § 245(b)(1)(D).

## I. *Plaintiffs Darryl and Daniel Snead*

The Court will strike the complaint with respect to Darryl and Daniel Snead, two of the three named plaintiffs, under Rule 11, F.R.Civ.P.,[10] which provides in part as follows:

"A party who is not represented by an attorney shall sign his pleading and state his address.

&ast; &ast; &ast; &ast; &ast; &ast;

If a pleading is not signed . . ., it may be stricken as sham and false and the action may proceed as though the pleading had not been served."

One purpose of Rule 11 is to assure that persons who are named as plaintiffs in an action actually assent to the filing of the action on their behalf. Since the present complaint was not signed by either Darryl or Daniel Snead, the Court will strike the

---

**5.** The former U. S. Attorney is David Marston and the four Assistant U. S. Attorneys are: Norman Greenspan, Louis Ruch, David Strawbridge and Frank Sherman.

**6.** The defense trial attorneys are: Austin McGreal, Nicholas J. Lisi, William Morrow, Bennett Weinstock and David H. Kubert.

**7.** The U. S. District Judges are: Hon. J. William Ditter, Hon. Donald W. VanArtsdalen, Hon. Alfred L. Luongo, and Hon. Herbert A. Fogel.

**8.** The alleged bank robbers, informers and perjurors are: Michael F. McNamee, Gary Crompton and Samuel D. Doman.

**9.** More specific allegations will be noted when necessary to the discussion of the various motions.

**10.** If the complaint were not stricken as to Darryl and Daniel Snead pursuant to Rule 11, their claims would be subject to dismissal based on the other defects in the complaint and the jurisdictional problems discussed *infra*.

complaint as to them. *Ahmad v. Levi*, 414 F.Supp. 597, 601 (E.D.Pa.1976); *Huffman v. Nebraska Bureau of Vital Statistics*, 320 F.Supp. 154, 156 (D.Neb.1970); *see Scarrella v. Midwest Federal Savings & Loan*, 536 F.2d 1207, 1209 (C.A.8, 1976), *cert. denied*, 429 U.S. 885, 97 S.Ct. 237, 50 L.Ed.2d 166 (1976). Furthermore, Arthur Snead is a layman and not an attorney. While he may represent himself with respect to his individual claims, *Collins v. O'Brien*, 93 U.S. App.D.C. 152, 208 F.2d 44 (1953), *cert. denied* 347 U.S. 944, 74 S.Ct. 640, 98 L.Ed. 1092 (1954), he is not authorized to act as an attorney for others in a federal court. 28 U.S.C. § 1654; *United States v. Wilhelm*, 570 F.2d 461 (C.A.3, 1978); *United States v. Whitesel*, 543 F.2d 1176 (C.A.6, 1976), *cert. denied*, 431 U.S. 967, 97 S.Ct. 2924, 53 L.Ed.2d 1062 (1977); *United States v. Kelley*, 539 F.2d 1199 (C.A.9), *cert. denied* 429 U.S. 963, 97 S.Ct. 393, 50 L.Ed.2d 332 (1976).

■ In striking the complaint with respect to Darryl Snead, the Court notes that in seeking damages for injuries he allegedly sustained as a result of an alleged assault and battery upon him by the defendant FBI agents, Darryl Snead appears to be asking the Court to imply a private cause of action under the Fifth Amendment based on the rationale of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). One important limitation upon the scope of *Bivens*, however, is "that the existence of an effective and substantial federal statutory remedy for the plaintiffs obviates the need to imply a constitutional remedy." *Mahone v. Waddle*, 564 F.2d 1018, 1024–25 (C.A.3, 1977), *cert. denied* 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978). In this respect the Court would follow the well-reasoned opinion of Judge Weinstein in *Torres v. Taylor*, 456 F.Supp. 951 (S.D.N.Y.1978), and hold that the Federal Tort Claims Act, as amended in 1974,[11] provides an adequate

remedy against federal law enforcement agents for an assault and battery. Thus, the Court would not create a *Bivens*-type cause of action for assault and battery and would dismiss Darryl Snead's claim for failure to state a claim upon which relief could be granted.

## II. *The District Judges*

■ It has long been the settled principle of law that a judge is immune from civil suits for actions arising from his judicial acts. *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872); *Robinson v. McCorkle*, 462 F.2d 111, 113 (C.A.3), *cert. denied* 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972). This doctrine of judicial immunity is absolute and extends to acts which are in excess of the judge's jurisdiction, even if done "maliciously or corruptly." *Bradley v. Fisher, supra*, 80 U.S. at 351. The only exception to the doctrine is for acts taken by a judge "[w]here there is clearly no jurisdiction over the subject-matter" involved. Hence, the proper inquiry

> "in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action be had jurisdiction over the subject matter before him."

*Stump v. Sparkman, supra*, 435 U.S. at 356, 98 S.Ct. at 1104–05. The Court has taken judicial notice of its own records pursuant to Rule 201, F.R.Evid.,[12] and has examined the case files in the criminal actions underlying this action in which Arthur and Daniel Snead were found guilty of aiding and abetting and conspiracy to rob four different banks.[13] The plaintiffs have named the four district judges who presided in those

---

11. 28 U.S.C. §§ 1346(b) and 2680(h).

12. *See United States v. Verlinsky*, 459 F.2d 1085, 1089 (C.A.5, 1972).

13. Criminal Action Nos. 76–500, 76–501, 76–502 and 76–503. All the convictions and sen-

tences imposed thereon were, upon appeal, affirmed by the Court of Appeals for the Third Circuit. Docket item 55 in Cr.A.No. 76–501; Docket Item 88, Cr.A.No. 76–503; Docket Item 47, Cr.A.No. 76–500; Docket Item 57, Cr.A.No. 76–502.

cases as defendants in this action and allege that each of the judges violated their rights. The criminal cases involved charges, brought by indictments, under 18 U.S.C. §§ 2113(a), (b) and (d), 371 and 2(a). It is clear, therefore, that each of the defendant judges had subject matter jurisdiction over the matter before him when he took the actions challenged here. Accordingly, in these circumstances, the defendant judges are absolutely immune from suit and the action will be dismissed with respect to them.

### III. *The United States Attorney and His Assistants*

■ The complaint also charges the defendants, David Marston, former United States Attorney, and his Assistant United States Attorneys Norman Greenspan, Louis J. Ruch, David Strawbridge and Frank Sherman, conspired with the other defendants to charge and convict the plaintiffs for bank robbery offenses which they did not commit. However, like the district judges, these defendants acted within the scope of their duties in initiating and pursuing criminal prosecutions against the plaintiffs and, therefore, are absolutely immune from civil suits for damages under 42 U.S.C. § 1983 for alleged deprivations of an accused's constitutional rights. *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The rationale for the *Imbler* holding that state prosecutors are absolutely immune from civil suits for damages is equally applicable to federal prosecutors in a *Bivens*-type action,[14] even when the relief sought, such as that demanded here, is something in addition to money damages. *Brawer v. Horowitz*, 535 F.2d 830, 834 (C.A.3, 1976). Accordingly, the action will be dismissed as to the federal prosecutor defendants.

### IV. *The "Blabber-mouth" Informer Witnesses*

■ The complaint also seeks damages against the defendants, Michael F. McNamee, Gary Crompton and Samuel E. Do-

man, identified as "Bank Robbers, Informers-Perjurors and Collaborators for the Federal Bureau of Investigation." These defendants testified against the plaintiffs in their criminal trials and plaintiffs allege they perjured themselves and "framed" the plaintiffs on baseless charges. In *Brawer v. Horowitz, supra,* the Court of Appeals for the Third Circuit assumed arguendo that a *Bivens*-type civil action would lie against a witness at a federal trial and went on to hold that such witnesses enjoy an immunity from civil damage suits. 535 F.2d at 836–37. Accordingly, the defendants who have been sued for their conduct as witnesses at plaintiffs' criminal trials are immune from the instant civil action and they will be dismissed from the suit.

■ In addition, the Court notes that defendants McNamee and Doman have never been served with process and are not before the Court. And while the defendant Crompton was purportedly served at the Morgantown, West Virginia Correctional Center,[15] this service is invalid under Rule 4(f), F.R.Civ.P. The Federal Rules provide that a summons may not be served outside the territorial limits of the state in which the district court sits unless such service is authorized by a statute of the United States or a statute or rule of court of the state in which the district court is held. This Court sits in the State of Pennsylvania and there is no federal or state law authorizing extra-territorial service in a case such as this.

### V. *FBI Agents and Defense Counsel*

■ The complaint also alleges in the most conclusory form that the defendant FBI agents entered into a conspiracy with the informer-witnesses to falsely accuse the plaintiffs of bank robbery and that the conspiracy was expanded to include the trial judges and defense counsel in a scheme to convict them of the false charges. According to the plaintiffs, the FBI agents determined that Michael McNamee was responsible for the bank robberies in question but

---

**14.** *Bivens, supra,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**15.** Docket Item 7.

believed that the robberies were masterminded by more experienced persons and then undertook to frame the plaintiffs. The complaint further alleges in general terms that plaintiffs' defense attorneys "went along with the frame-up" because "they were intimidated by the crafty maneuverings of the FBI agents." In this respect, the plaintiffs rely on several statutory provisions to state their claims. Initially, the allegations asserting a cause of action based on 18 U.S.C. § 245(b)(1) may be disregarded because that provision is solely a criminal statute. Section 245(b)(1) permits federal prosecution for interference with a long list of federally protected activities; it confers neither substantive rights nor a private right of action for damages. *See New York v. Horelick*, 424 F.2d 697, 702 (C.A.2), *cert. denied*, 398 U.S. 939, 90 S.Ct. 1839, 26 L.Ed.2d 273 (1970); *Staelens v. Yake*, 432 F.Supp. 834, 836 n.1 (N.D.Ill. 1977).

■■■ Plaintiffs also rely on 42 U.S.C. §§ 1985(2) and (3) and 1986 to state a cause of action for damages against the FBI agents and defense counsel.[16] However, in order to state a claim under section 1985(3), which authorizes damage suits against persons who conspire to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," the plaintiffs must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Since no such allegation has been made, the plaintiffs' claim of conspiracy based on § 1985(3) against all the defendants, including the FBI agents and defense counsel, will be dismissed.

■■■ Turning to the plaintiffs' claims under 42 U.S.C. § 1985(2),[17] the Court notes that the statute is divided by a semicolon into two parts. The latter part applies to conspiracies to obstruct justice "in any State or Territory" undertaken "with intent to deny to any citizen the equal protection of the laws." The Courts have construed this part of section 1985(2) as requiring a "class-based, invidiously discriminatory animus" as an essential element of a claim thereunder. *Brawer v. Horowitz*, supra, 535 F.2d at 840; *Hahn v. Sargent*, 523 F.2d 461, 469 (C.A.1, 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976); *accord, Dacey v. Dorsey*, 568 F.2d 275, 277 (C.A.2, 1978). Because the plaintiffs have not alleged any class-based animus, their claim under the second half of section 1985(2) against all the defendants will be dismissed.

As Judge Aldisert pointed out in *Brawer v. Horowitz, supra*, the reach of the first part of § 1985(2) is limited in a different way.

---

16. The decision of the Third Circuit in *Brawer v. Horowitz, supra*, 535 F.2d at 839, suggests that 42 U.S.C. §§ 1985 and 1986 apply to actions taken under color of federal law. *See Griffin v. Breckenridge*, 403 U.S. 88, 96–101, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Jennings v. Shuman*, 567 F.2d 1213, 1221 n.12 (C.A.3, 1977); *J. D. Pflaumer, Inc. v. United States Department of Justice*, 450 F.Supp. 1125, 1130 & n.9 (E.D.Pa.1978).

17. Section 1985(2) provides:

(2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

. . . [T]he party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

"The first half of § 1985(2) aims at conspiracies the object of which is intimidation of or retaliation against parties or witnesses, or grand or petit jurors, in any court of the United States. The federal nexus, then, is not the class-based, invidiously discriminatory animus required by the second half of the subsection, but the connection of the proscribed activities to a federal court. Viewing the statute in this light and assuming appellants would seek to invoke this part, . . . the thrust of their argument must be that Horowitz and Mauceli 'conspire[d] to . . . *influence* the verdict . . . or indictment of [the] grand or petit juror[s]' by agreeing to use perjured testimony and to conceal exculpatory evidence. After careful consideration we have concluded that such a construction would be impermissibly generous. We understand the first part of § 1985(2) to concern itself with conspiratorial conduct that *directly* affects or seeks to affect parties, witnesses or grand or petit jurors. The allegations of this complaint are different in kind. At best, the allegation is that the conspiracy 'influenced' the jurors by precluding them from considering fully accurate evidence. We deem this 'influence' to be too remote to fit within the intended ambit of § 1985(2)."

535 F.2d at 840. Inasmuch as the instant complaint alleges a conspiracy to use perjured testimony in order to indict and convict the plaintiffs, it is indistinguishable from *Brawer v. Horowitz* and to that extent fails to state a claim under § 1985(2). However, the plaintiffs also allege that the defendant FBI agents (1) "terrorized and intimidated" defense witnesses and advised them that they did not have to obey subpoenas to appear at the criminal trials of the plaintiffs [18] and (2) intimidated the defense lawyers by "crafty maneuverings . . . so that their jobs were drawn into the conspiratorial web of the FBI as against Plain-

tiffs." [19] It is arguable therefore that the plaintiffs have made out a claim for damages under § 1985(2).

It is unnecessary to decide that question, however, because the Court has concluded that, even assuming arguendo that the plaintiffs have stated a cause of action under § 1985(2) or directly under the Fifth or Sixth Amendment pursuant to *Bivens* [20] or both, the defendant FBI agents and defense counsel still would be entitled to summary judgment on all the claims asserted against them.

■ Many, if not all, of the claims are barred by collateral estoppel. As the Supreme Court stated in *Preiser v. Rodriguez*, 411 U.S. 475, 497, 93 S.Ct. 1827, 1840, 36 L.Ed.2d 439 (1973), principles of *"res judicata* ha[ve] been held to be fully applicable to a civil rights action brought under § 1983." (Citations omitted). Similarly, most courts have applied collateral estoppel in § 1983 actions regardless of whether the prior proceeding was civil or criminal. *Mastracchio v. Ricci*, 498 F.2d 1257, 1259–60 (C.A.1, 1974), *cert. denied* 420 U.S. 909, 95 S.Ct. 828, 42 L.Ed.2d 838 (1975) (citing cases); *see Kauffman v. Moss*, 420 F.2d 1270, 1274 (C.A.3), *cert. denied* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970). The fact that the instant case involves § 1985(2) and *Bivens*-type causes of action does not make the doctrine of collateral estoppel any less applicable. *See Willard v. United States*, 422 F.2d 810 (C.A.5), *cert. denied* 398 U.S. 913, 90 S.Ct. 1714, 26 L.Ed.2d 76 (1970).

In *Kauffman v. Moss, supra,* Judge Stahl wrote:

"The standard for determining if litigation of a question in a civil suit is barred by a prior criminal trial is whether the question was ' "distinctly put in issue and directly determined" in the criminal prosecution. * * * In the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the

18. Docket Item 1, pp. 4 and 9.

19. *Id.*

20. *See United States ex rel. Moore v. Koelzer,* 457 F.2d 892 (C.A.3, 1972); 1*Paton v. LaPrade,*

524 F.2d 862 (C.A.3, 1975); *J. D. Pflaumer, Inc. v. United States Department of Justice,* 450 F.Supp. 1125, 1131 (E.D.Pa.1978).

verdict must be regarded as having been determined by the judgment.' *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 569, 71 S.Ct. 408, 95 L.Ed. 534 (1951)."

420 F.2d at 1274. Applying that standard to this case, the Court notes first that the plaintiff Arthur Snead was tried and convicted in the Eastern District of Pennsylvania four times [21] for four different bank robberies. The convictions in each case were appealed and the Court of Appeals for the Third Circuit affirmed all of them.[22] Thus, any questions distinctly put in issue and directly determined in those criminal proceedings may not be relitigated here.

The complaint in this action is very general and fails to plead facts with the specificity required in civil rights cases. *See Negrich v. Hohn*, 379 F.2d 213 (C.A.3, 1967). Arthur Snead, however, has filed numerous affidavits and other papers which set out, albeit in a prolix and repetitive form, the specific conduct of which he complains.[23] Because the plaintiffs are proceeding *pro se*, the Court will consider those documents along with the pleadings and treat the defendants' motions to dismiss as motions for summary judgment. Rules 12(b) and 56, F.R.Civ.P.

Based on the Court's review of the records in the underlying criminal cases and the plaintiffs' own statements, it is clear that the credibility of the Government's informer-witnesses was an essential issue in each of the criminal cases. Consequently, the plaintiffs' convictions bar them from litigating in this case the existence of perjury in the underlying criminal trials and therefore precludes any recovery for conspiracy to suborn perjury from the FBI agents or defense counsel. *See Kauffman v. Moss, supra*, 420 F.2d at 1275 and n.11.

The allegations that the FBI agents interfered with defense witnesses and intimidated the defense counsel into rendering ineffective assistance of counsel to the plaintiffs apparently were not raised on direct appeal. However, those allegations were contained in *pro se* motions to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 filed by plaintiff Arthur Snead in November, 1977 in each of the four criminal cases. On December 27, 1977, Judge VanArtsdalen denied and dismissed the plaintiff's § 2255 motion in Cr. A.No. 76–500.[24] Faced with essentially the same allegations as presented in the instant complaint, Judge VanArtsdalen held that in the trial over which he had presided the plaintiff Arthur Snead had received effective assistance of counsel. Thus, any claim based on ineffective assistance of counsel in Cr.A.No. 76–500 is precluded by collateral estoppel.

Among the reasons given in both the instant case and Cr.A.No. 76–500 to support the plaintiffs' claim of ineffective assistance was the failure of defense counsel to interview and call to the stand the following persons: (1) Gary Kirk, (2) Mrs. Regina Lee, the mother of the defendant informer McNamee, and (3) Mr. Winitz, a Philadelphia constable. Kirk gave testimony at a trial before Judge Hannum concerning the driver of a vehicle purportedly used in a bank robbery that occurred on March 24, 1976. Kirk's testimony contradicted the testimony of two government witnesses, McNamee and Crompton, and may have contributed to the acquittal of Daniel Snead in that action. Kirk, however, did not witness anything related to the four bank robberies underlying the present action and plaintiffs proposed to use his testimony solely for the purpose of impeaching McNamee and Crompton. Mrs. Lee had been

---

**21.** Criminal Action Nos. 76–500, 76–501, 76–502, and 76–503. All but Cr.A.No. 76–502 were jury trials.

**22.** *See* note 13 *supra*.

**23.** The most complete statement of the grounds for the complaint is contained in Docket Item 16.

**24.** Docket Item 50, Cr.A.No. 76–500. Section 2255 provides that an appeal may be taken from such a dismissal "as from a final judgment on application for a writ of habeas corpus." No appeal was taken.

interviewed by the FBI in April 1976 concerning one of the bank robberies and her statements contributed to the apprehension of her son on charges of bank robbery. The plaintiffs apparently wanted to call Mr. Winitz to rebut an attack on Arthur Snead's credibility. Judge VanArtsdalen held that the failure of defense counsel to use these potential witnesses in Cr.A.No. 76–500 did not amount to ineffective assistance of counsel.

In addition, Judge Ditter entered an order on September 27, 1978 denying a motion to reconsider a denial of a new trial in Cr.A.No. 76–501, in which he held that Kirk's testimony would not have been relevant to the issues raised in that action and could have prejudiced the jury against Mr. Snead or confused the jury.[25] Judge Ditter also reviewed several statements given by Mrs. Lee to the FBI and her grand jury testimony and found that the relevance of her statements had not been shown. The issues in all four criminal trials were very similar and, after reviewing all the plaintiffs' affidavits, the Court is convinced that the testimony of Mr. Kirk, Mrs. Lee and Mr. Winitz would not have been any more relevant in Cr.A.Nos. 76–502 and 76–503 than it was in the other two actions. Consequently, the reasoning in the aforementioned decisions by Judge Ditter and Judge VanArtsdalen concerning the failure to use those witnesses applies equally to all four cases.

The plaintiffs allege that the FBI agents violated their constitutional and statutory rights by visiting a Mr. Bird at his home and advising him that he could disobey a subpoena to testify at plaintiffs' trial if he so desired. They further allege that the refusal of defense counsel to call Mr. Bird as a witness in Criminal Nos. 76–502 and 76–503 constituted ineffective assistance of counsel. The claims founded on these allegations are frivolous. The plaintiffs apparently wanted to call Mr. Bird to testify about his contact with the FBI and nothing else. Such testimony would not have been relevant to the issues in any of the four criminal trials and defense counsel clearly did not violate the plaintiffs' constitutional rights by refusing to present it.

The plaintiffs made several other allegations concerning the conduct of the FBI agents and defense counsel, but the Court, after carefully reviewing all of those allegations and accepting them to be true, holds that none of those allegations give rise to a constitutional violation. Accordingly, summary judgment will be entered in favor of the defendant FBI agents and defense counsel on all the claims asserted against them.[26]

### VI. *Other Relief Requested*

The plaintiffs have also requested (1) an order requiring the defendants to take lie detector tests and voice and stress analysis and (2) a writ of mandamus ordering the convicting trial courts and affirming Court of Appeals to vacate and set aside their criminal convictions. This Court has neither the power nor jurisdiction to give this type relief in this suit even if the plaintiffs were otherwise successful.[27]

An order will be entered in accordance with this Memorandum Opinion.

---

**25.** Docket Item 59, Cr.A.No. 76–501.

**26.** Since the plaintiffs have failed to state a claim under § 1985, *a fortiori* they likewise have failed to state a claim under § 1986. *Brawer v. Horowitz, supra,* 535 F.2d at 841; *Hahn v. Sargent, supra,* 523 F.2d at 469–70; *Hamilton v. Chaffin,* 506 F.2d 904, 914 (C.A.5, 1975).

**27.** In view of the Court's disposition of this case, it is unnecessary to rule on other defects in the case raised by the various motions, such as (1) the action is barred by the applicable statute of limitations, (2) the exclusive remedy to attack the underlying convictions is by a Section 2255 proceeding, and (3) the action amounts to a successive § 2255 petition barred by Rule 9, Rules Governing § 2255 Proceedings.