Robert F. JENNINGS, Appellant,

v.

Arthur SHUMAN, Jr., Robert J. Conway, Gustave Naring, and John Doe.

No. 76–2517.

United States Court of Appeals, Third Circuit.

Argued Sept. 6, 1977.

Decided Nov. 30, 1977.

* Honorable Albert W. Coffrin, United States District Judge for the District of Vermont, sitting by designation.

Thomas A. Bergstrom, Edwin P. Rome, Richard M. Rosenbleeth, Victor A. Young, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for appellant.

Nicholas J. Nastasi, Philadelphia, Pa., for appellee Shuman.

Cody H. Brooks, Lawrence M. Ludwig, Henkelman, McMenamin, Kreder & O'Connell, Scranton, Pa., for appellee Conway.

Richard D. Ballou, Honesdale, Pa., for appellee Naring.

Before HUNTER, VAN DUSEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This is an appeal from an order dismissing a suit by plaintiff, Robert F. Jennings, brought pursuant to 42 U.S.C. § 1983 and § 1985(3).[1] Alleging that defendants, acting under color of state law, violated his constitutional rights, plaintiff sought damages and a declaratory judgment that his First, Fourth, Ninth and Fourteenth Amendment rights had been violated. The defendants moved to dismiss pursuant to F.R.Civ.P. 12(b), contending, *inter alia*, that the suit was barred by the applicable Pennsylvania statute of limitations and, therefore, the action should be dismissed, that the plaintiff had failed to state a claim against defendants which would entitle him to relief under any set of facts which could be proved at trial, and that the defendants were absolutely immune from suit under the doctrine of *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The district court held that the suit was barred by the applicable statute of limitations and, therefore, dismissed the suit. We reverse insofar as the district court's order relates to the § 1983 claim and the pendent

---

1. 42 U.S.C. § 1983 provides:

 "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

 42 U.S.C. § 1985(3) provides in pertinent part:
 "If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any

 person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against anyone or more of the conspirators."
 In a pendent tort claim, plaintiff also alleges a violation of Pennsylvania common law.

state tort claim, but we hold that the § 1985(3) claim must be dismissed for failure to allege a cause of action under that statute.

## I.

■ The district court's ruling was based solely on the pleadings; therefore, in this procedural posture we take all of the well-pleaded allegations of the complaint as true and construe the complaint liberally in the light most favorable to the plaintiff.[2]

The facts alleged, though bordering on the bizarre, can be summarized briefly. Essentially, the complaint avers a conspiracy by defendants to bring false criminal charges against the plaintiff and to extort from him his wife, his son, and $150,000.

The plaintiff, in his official capacity as Wayne County Coroner, investigated the death of a patient at the Hillcrest School. The owner of the school was charged with murder, and defendant, Arthur Shuman, Jr., was appointed assistant special prosecutor to prepare and try the murder case. While Jennings and Shuman were working on the case together, Shuman had an affair with Jennings' wife. Shuman then conspired with defendant Robert J. Conway, the Wayne County District Attorney, and defendant Gustave Naring, a police officer, and devised his extortion scheme. In furtherance of Shuman's plan, a criminal complaint charging Jennings with solicitation to commit burglary was sworn out, based on false statements knowingly, intentionally and maliciously made by Naring. Jennings' arrest on this charge, in derogation of the normal procedure, was immediately made known to the local news media. Shuman spearheaded the investigation and prosecution of Jennings on this charge. Conway, who would normally prosecute such a case, in furtherance of the conspiracy, acquiesced in Shuman's actions and, during the pendency of the investigation and prosecution, made an extortionary demand upon Jennings for Jennings to give the conspirators $150,000. and to give up his wife and son to Shuman. In return, Conway promised to "take care of" Jennings at the grand jury proceedings on the charge of solicitation to commit burglary. Presumably, Conway would receive a portion of the $150,000. the defendants sought to extort.

The grand jury failed to return a true bill against Jennings.

## II.

■ In civil rights actions under 42 U.S.C. §§ 1983, 1985, federal courts must ascertain the underlying cause of action under state law and apply the limitation period which the state would apply if the action had been brought in state court. *Polite v. Diehl*, 507 F.2d 119, 122 (3d Cir. 1974); *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974). The complaint in this case suggests two possible underlying causes of action: malicious use of process (also known as malicious prosecution) having a statute of limitations of one year from the date of termination of prosecution, Pa.Stat.Ann. tit. 12 § 51; *Polite v. Diehl, supra*; and malicious abuse of process, subject to the general trespass, two-year statute of limitations. Pa.Stat.Ann. tit. 12 § 31; *Funk v. Cable*, 251 F.Supp. 598, 600 (M.D.Pa.1966).[3] Jennings brought his action after the statute of limitations for malicious use of process had run, but before the statute of limitations for malicious abuse of process had run. The district court applied the malicious use statute of limitations. We must decide whether the complaint alleges facts sounding in the tort

---

**2.** *See, e. g. Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Helstoski v. Goldstein*, 552 F.2d 564 (3d Cir. 1977). Defendants made clear that they were not relying on affidavits they had filed. See, for example, A69–A70. See also the district court's memorandum dated 8/26/76 at A4. The district court filed two memoranda dated 8/26/76 and 9/23/76, which are reproduced at A3 and A14, respectively.

**3.** We find no merit to defendant Shuman's contention that *Hughes v. Swinehart*, 376 F.Supp. 650 (E.D.Pa.1974), casts doubt on the applicability of the two-year statute of limitations to malicious abuse of process.

of malicious abuse of process, and, if so whether this cause of action is so inextricably intertwined with malicious use of process that the shorter statute of limitations should be applied nonetheless.

To determine in which tort, if either, the facts alleged sound requires an examination of both torts and the distinction between them. The defendants contend that the distinction is as follows. If prosecution or process is initiated without probable cause and with a bad motive, malicious use of process lies. If prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law, malicious abuse of process lies. The defendants conclude that, because the complaint indicates that prosecution was not initiated legitimately, only malicious use of process will lie. The plaintiff argues that regardless of whether the initial process is issued with or without probable cause, if it is thereafter used for an unlawful purpose, malicious abuse of process lies.

■ A review of the authorities supports the plaintiffs' position and establishes that the torts are not mutually exclusive, and that the presence or absence of probable cause is irrelevant to malicious abuse of process.

The tort of malicious abuse of process originated with the English case, *Grainger v. Hill*, 4 Bing. (N.C.) 211, 132 Eng.Rep. 769 (1838), and that case is helpful in understanding the Pennsylvania cases we must follow here for purposes of determining the statutory period. In *Grainger* the defendants had loaned money to the plaintiff, secured by a mortgage on the plaintiff's ship. Under apprehension of the sufficiency of their security, the defendants demanded payment before it was due. Upon plaintiff's refusal, they had him arrested under a *capias* to force him to surrender the ship's registry, without which he could not sail. Process was maliciously used because there was no probable cause for arrest and was maliciously abused to force the plain-

tiff to pay money not owed and to prevent him from going to sea. Because plaintiff settled the debt with the defendants and, accordingly, did not receive a judgment in his favor, he was precluded from suing for malicious use of process. In holding for the plaintiff, Chief Justice Tindall said, "[T]his is an action for abusing the process of law, by applying it to extort property from the Plaintiff . . . and his complaint being that the process of law has been abused, to effect an object not within the scope of the process, it is immaterial . . . whether or not it [the suit against the plaintiff] was founded on reasonable and probable cause." 4 Bing. (N.C.) at 221, 132 Eng.Rep. at 773. Therefore, according to *Grainger*, if the facts allege an abuse of process, that they also allege a lack of probable cause is immaterial; it does not make the tort sound in only malicious use of process.

The distinction between the two torts in the Pennsylvania cases can be readily understood against the background of *Grainger*. In *Mayer v. Walter*, 64 Pa. 283 (1870), the Pennsylvania Supreme Court first distinguished between the two torts. Citing *Grainger*, the court stated:

"There is a distinction between a malicious use and a malicious abuse of legal process. An abuse is where the party employs it for some unlawful object, not the purpose which it is intended by the law to effect; in other words, a perversion of it. Thus, if a man is arrested, or his goods seized in order to extort money from him, even though it be to pay a just claim other than that in suit, or to compel him to give up possession of a deed or other thing of value, not the legal object of the process, it is settled that in an action for such malicious abuse it is not necessary to prove that the action in which the process issued has been determined, or to aver that it was sued out without reasonable or probable cause: *Grainer [sic] v. Hill*, 4 Bing.N.C. 212. It is evident that when such a wrong has been perpetrated, it is entirely immaterial

whether the proceeding itself was baseless or otherwise."

*Id.* at 285–86.

Thus, *Mayer*, like *Grainger*, held that in a malicious abuse of process case, presence or absence of probable cause is irrelevant.[4]

■ In *Publix Drug Co. v. Breyer Ice Cream Co.*, 347 Pa. 346, 348–49, 32 A.2d 413, 415 (1943), the court summarized the distinction between the two torts by saying that "[m]alicious use of civil process has to do with the wrongful initiation of such process, while abuse of civil process is concerned with a perversion of a process after it is issued." Therefore, if a process is wrongfully initiated and thereafter perverted, both torts lie. Hence, the torts are not mutually exclusive.[5]

Other authorities also support the proposition that the torts are not mutually exclusive and that want of probable cause is irrelevant to malicious abuse of process. For example, in *Weiss v. Hunna*, 312 F.2d 711 (2d Cir. 1963), Judge Friendly says that in the tort of malicious abuse, once the process is issued, the only thing that is important is the purpose for which it is used. Therefore, presence or absence of probable cause is not important. This view is also consistent with Comment a of § 682 of the Restatement of Torts, Second, which states that it is *"immaterial* that process was properly issued . . . ." (emphasis supplied).[6] Finally, Dean Prosser notes that "there are many cases in which they [the two torts] overlap and either will lie . . . ." W. Prosser, Handbook of the Law of Torts 857 (4th ed. 1971).

The defendants cite only one case that is directly contrary to this weight of authority. In *Hughes v. Swinehart*, 376 F.Supp. 650, 653 (E.D.Pa.1974), the court said: "[U]nder Pennsylvania law malicious abuse of process is concerned with the issue of process where there is probable cause and a later perversion of that process to accomplish another purpose." In light of the Pennsylvania cases discussed above, we think this is an incorrect statement of the law.

Once it is recognized that the two torts can overlap and that the probable cause issue is irrelevant to malicious abuse of process, the distinction between the two torts can be illustrated clearly against the factual backdrop of this case.

■ We begin by distinguishing the justification given for issuance of process from the use to which process is put.[7] The justification given may be either legitimate

**4.** See also *Morphy v. Shipley*, 351 Pa. 425, 429, 41 A.2d 671, 673–74 (1945), in which the court said:

> "Where a suit is for *malicious use* of legal process, it is incumbent upon the plaintiff to aver and prove that the defendant acted not only maliciously but without reasonable or probable cause. *Mayer v. Walter*, 64 Pa. 283, 286; *Johnson v. Land Title Bank & Trust Company*, 329 Pa. 241, 242, 243, 198 A. 23. But a plaintiff need prove neither want of probable cause nor malice where the claim is for an abuse of legal process. See *Mayer v. Walter*, supra, 64 Pa. at page 286; *Siegel v. Netherlands Company, Inc.*, 59 Pa.Super. 132, 138; and *Korrallas v. Griffiths*, 70 Pa.Super. 431, 433. Malice and want of probable cause are concomitant ingredients of conduct which amounts to an abuse of legal process. 'An abuse is where the party employs it [i. e., legal process] for some unlawful object, not the purpose which it is intended by the law to effect; in other words, a perversion of it.' See *Mayer v. Walter*, supra, and the illustrations there given at page 286."

This is undoubtedly consistent with *Grainger* and *Mayer*, for although it suggests that want of probable cause is essential for malicious use of process, it does not suggest that the presence of probable cause prevents facts from sounding in malicious abuse of process.

**5.** See also *Funk v. Cable*, 251 F.Supp. 598 (M.D.Pa.1966), in which the court suggested that the complaint indicates that the allegation could sound in either of the two torts.

**6.** Section 682 defines malicious abuse of process as follows:

> "One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process."

**7.** For a discussion of the distinction between the justification for and the use of process, *cf. Baird v. Aluminum Seal Co.*, 250 F.2d 595, 600 (3d Cir. 1957).

or illegitimate. If it is illegitimate, there is malicious use. Likewise, the use to which process is put can be either legitimate or illegitimate, and, if illegitimate, there is malicious abuse. For example, if the defendant justifies issuance of process by untruthfully saying that the plaintiff solicited burglary and uses the process only to have him jailed, this is malicious use only. It is not malicious abuse because jailing is the purpose for which criminal process was intended. If the defendant has process issued based on the truthful statement that the plaintiff solicited burglary and then uses the threat of prosecution for purposes of extortion, this is malicious abuse only. Finally, if, as is alleged in the present case, the defendant has process served based on false statements and uses threat of prosecution for purposes of extortion, both torts will lie.

Having decided that the plaintiff's cause of action sounds in both torts, we need only decide which statute of limitation applies. In *Polite v. Diehl,* 507 F.2d 119 (3d Cir. 1974) (en banc), we held that where the underlying causes of action in a § 1983 case were both false arrest, having a one-year statute of limitations, and assault and battery, having a two-year statute of limitations, the two-year statute of limitations controlled insofar as the complaint alleged assault and battery. We think this principle is applicable here and hold that the judgment of the district court was only justified insofar as it dismissed the cause of action for malicious use of process, but the plaintiff is entitled to have a trial on the cause of action of malicious abuse of process. This holding requires us to determine whether, regarding each defendant, the complaint alleges facts sounding in abuse of process.

 It is clear that the complaint alleges that Shuman and Conway abused process, for it avers that after process had been issued, Conway, under directions from Shuman, made an extortionate demand upon the plaintiff. Defendant Naring is in a different position. The complaint alleges that he made false statements which provided a basis for the criminal process under which the plaintiff was arrested. This is malicious use of process only. A fair reading of the complaint, however, suggests that Naring was still a member of a conspiracy to deprive the plaintiff of his constitutional rights after process was issued and was being abused. Involvement in a conspiracy is actionable under § 1983. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 150–161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Therefore, the plaintiff should be given the opportunity to prove that Naring was part of such a conspiracy to abuse process even though Naring's primary role concerned the malicious use of process.

To summarize, the Pennsylvania statute of limitations does not preclude the court from exercising jurisdiction over any of the defendants with regard to the malicious abuse of process claim underlying the § 1983 cause of action.[8] However, the statute of limitations does bar a claim against the defendants for malicious use of process.

### III.

The defendants contend that even if the statute of limitations does not bar the suit, the court does not have jurisdiction because, on the facts alleged, the plaintiff was not deprived of constitutional rights by persons acting under color of state law. We are faced, then, with two questions. Were the defendants, on the facts alleged, acting under color of state law? Did they deprive the plaintiff of constitutional rights?

### A. COLOR OF STATE LAW

The defendants argue that if the action is for malicious use of process and were not barred by the statute of limitations, there would be jurisdiction under § 1983 because issuance of process is an act done under color of state law. But, the defendants contend, if the action is for malicious abuse of process, there is no jurisdiction because

---

8. For reasons indicated at text accompanying notes 11–13, *infra,* we do not think the complaint states a cause of action under 42 U.S.C. § 1985(3), quoted at note 1, *supra.*

the abuse of process after it was issued was not done under color of state law. This argument misconstrues the test for acting under color of state law. "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941).[9]

█ Certainly Shuman falls within the *Classic* standard because his official position as special prosecutor enabled him to undertake the investigation and prosecution of the plaintiff and thereby abuse process for purposes of extortion. Regarding defendant Conway, the plaintiff might be able to prove that Conway was able to perform a key role in Shuman's scheme because he was clothed with the power of the district attorney's office and that Conway's cooperation in his official position was essential to Shuman's scheme. Conway, according to the complaint, promised to "take care of" the plaintiff if the plaintiff met the extortionate demand. Such a promise could be effective because it was made by one clothed with the authority of state law.

█ Although Naring's alleged role in the scheme—making false statements which provided a basis for the criminal process—possibly could have been performed by a private citizen, Naring could be liable under § 1983 even if he was acting in a private capacity. A private citizen, acting in concert with public officials, is liable under § 1983, *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and, as noted above, the complaint alleges that Naring conspired with Conway and Shuman. Therefore, it might be possible for the plaintiff to prove, con-

sistent with the facts alleged in the complaint, that all of the defendants were acting under color of state law.

## B. DEPRIVATION OF CONSTITUTIONAL RIGHTS

The defendants argue that, although malicious use of process is a constitutional tort in that the plaintiff is unjustifiably deprived of liberty when falsely arrested, malicious abuse of process does not deprive the plaintiff of constitutional rights. We disagree.

█ An abuse of process is by definition a denial of procedural due process. A deprivation of liberty or a determination of guilt or innocence may not be made on the basis of willingness to accede to extortionate demands. The plaintiff alleges a conspiracy which for purposes of the statute of limitations is analogous to the tort of abuse of process. The goal of that conspiracy was extortion, to be accomplished by bringing a prosecution against him without probable cause and for an improper purpose. The injuries allegedly caused by defendants' actions include the deprivation of liberty concomitant to arrest and to the pendency of a criminal process, whether the plaintiff was in jail, released on bail, or released on his own recognizance. Such deprivations without due process state an injury actionable under section 1983.[10] *See, e. g., Economou v. United States Department of Agriculture,* 535 F.2d 688 (2d Cir. 1976), *cert. granted sub nom. Butz v. Economou,* 429 U.S. 1089, 97 S.Ct. 1097, 51 L.Ed.2d 534 (1977).

█ Although we conclude that the complaint states a claim for relief under § 1983, we reach the opposite conclusion

**9.** This interpretation was reaffirmed by the Supreme Court in *Screws v. United States,* 325 U.S. 91, 108–13, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), and *Monroe v. Pape,* 365 U.S. 167, 183–86, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

**10.** Plaintiff seeks a declaratory judgment that his First, Fourth, Ninth and Fourteenth Amendment rights have been violated. A prayer for such relief is consistent with the facts alleged in the complaint. The plaintiff apparently cites

these Amendments to establish a constitutional basis for the violation of the right to privacy. Because of the undeveloped state of the record at this procedural stage and because of the undeveloped state of the constitutional tort of invasion of privacy, *cf. Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Paul v. Davis,* 424 U.S. 693, 713, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), we decline to meet this issue.

regarding the claim under 42 U.S.C. § 1985(3). In contrast to § 1983, which provides a cause of action for the violation of any constitutional right, § 1985(3) provides a cause of action only when the plaintiff's right to equal protection, privileges or immunities is violated.[11] The Supreme Court has held that this "means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus . . . ." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).[12] Even on a liberal reading of the complaint we cannot discern facts alleging a class-based invidiously discriminatory animus.[13] Therefore, although we disagree with the basis on which the district court dismissed the complaint under 42 U.S.C. § 1985(3), we conclude that the portion of the complaint alleging a violation of this statute was properly dismissed.

## IV.

■ Defendants Conway and Shuman contend that they are absolutely immune from the federal civil rights suit under *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).[14]

In *Imbler v. Pachtman* the court stated that "initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Id.* at 431, 96 S.Ct. at 995. The Court expressly reserved the issue of whether a prosecutor was immune "for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Id.* at 430–31, 96 S.Ct. at 995. The only court of appeals decision to consider this unanswered question is *Briggs v. Goodwin*, 186 U.S.App.D.C. ——, 569 F.2d 10 (1977).[15] Applying *Imbler* in *Helstoski v. Goldstein*, 552 F.2d 564 (3d Cir. 1977),[16] this court held that even if prosecutorial immunity extended to his administrative and investigative functions, it did not extend to a prosecutor's actions that go beyond the scope of those functions. Earlier, in *United States ex rel. Rauch v. Deutsch*, 456 F.2d 1301 (3d Cir. 1972), we held that where a prosecutor was alleged to have arrested and prosecuted the plaintiff as part of a scheme to extort money, he was entitled to absolute immunity. In light of *Helstoski*, we read *Rauch* as standing for the principle that a prosecutor is entitled to absolute immunity "while performing his official duties," *id.* at 1302, as a officer of the court, even if, in the performance of

11. See note 1, *supra*.

12. Because § 1985(3) does not require the defendant to act under color of state law, the Supreme Court arrived at this formula not only by relying on the unambiguous language of the statute, but also by a fear of creating "general federal tort law" applicable to private citizens.

13. For a discussion of the *Griffin v. Breckenridge* test and its application by the other circuit courts, see Comment, Private Conspiracies To Violate Civil Rights: *McLellan v. Mississippi Power & Light Co.*, 90 Harv.L.Rev. 1721 (1977); Note, The Scope of Section 1985(3). Since *Griffin v. Breckenridge*, 45 Geo.Wash.L. Rev. 239 (1977).

14. *Naring does not raise the immunity issue*, and at this stage he cannot. As a police officer, he is not protected by absolute immunity, but only by qualified immunity requiring him to raise the defense of good faith. *Imbler v. Pachtman*, 424 U.S. at 430, 96 S.Ct. 984; *Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The facts alleged in the complaint amply support the position that Naring was not acting in good faith.

15. On the facts presented in the complaint, it is not necessary for us to answer this question. Therefore, we need take no position on the correctness of the *Briggs* opinions, and we note that the dissent in *Briggs*, as well as commentaries on the immunity issue in general, indicate a split of opinion. For example, *compare* Comment, *Economou v. United States Department of Agriculture*: Blurring the Distinctions Between Constitutional and Common Law Tort Immunity, 18 Wm. & Mary L.Rev. 628, 648 (1977), *with* Note, Delimiting the Scope of Prosecutorial Immunity From Section 1983 Damage Suits, 52 N.Y.U.L.Rev. 173, 175 (1977).

16. In *Helstoski, supra* at 566, the court said:
 "We note, in particular, the several allegations of deliberate leaks by the prosecutor of false information concerning Mr. Helstoski in order to damage his political prospects. It would appear that such activity, if it occurred would lie outside of the rationale for absolute immunity set forth in *Imbler*."

those duties, he is motivated by a corrupt or illegal intention.

Since the district court did not consider the immunity issue, we decline to do so on the abbreviated record now before us. On the record before us, it is difficult to determine whether Conway was performing his official duties. We note that, although some of the activities alleged of Shuman may have been normal activities of a prosecutor, according to the complaint, he had no authority to act as a prosecutor in Jennings' case. He was appointed as a special prosecutor to investigate and prosecute the murder at the Hillcrest School, and under Pa. Stat.Ann. tit. 16 § 1422 (Purdon) (1956) his authority was limited to "preparation and trial of any indictment for homicide or murder on behalf of the Commonwealth."

The order of the district court will be reversed and the case remanded for further proceedings in accordance with the foregoing opinion.