**Oscar HOLLY**

v.

**Warden Thomas RAPONE et al.**

**Civ. A. No. 79–2271.**

United States District Court,
E. D. Pennsylvania.

Aug. 31, 1979.

Oscar Holly, pro se petition in forma pauperis.

---

1. The action is brought under the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1976). Jurisdiction of this court is founded upon 28 U.S.C. § 1343(3) (1976).

2. Declaratory relief is brought pursuant to 28 U.S.C. § 2201.

## MEMORANDUM AND ORDER

JOHN MORGAN DAVIS, Senior District Judge.

This is a civil rights action[1] brought by Oscar Holly, *pro se*, against Thomas Rapone, Warden, Delaware County Prison, and various other supporting prison personnel. The plaintiff alleges the denial of his constitutional liberties by the defendants under color of state law. Holly seeks declaratory relief[2] to prevent the retaliation by prison officials against him for initiating this suit and money damages[3] of $465,000 for the alleged violations of his eighth and fourteenth amendment rights. The plaintiff has requested and the court has granted him, permission to proceed *in forma pauperis*. However, I have decided to dismiss the action as irreparably frivolous pursuant to 28 U.S.C. § 1915(d).

### Procedural History

This case comes before me with an interesting and rather unusual procedural history. On March 21, 1978, the plaintiff and a fellow-prisoner, Charles M. Cataleno, filed a *pro se* civil rights complaint in this Court.[4] That complaint was referred to Magistrate Edwin E. Naythons, who recommended that the motion to proceed *in forma pauperis* be granted. The defendants thereupon moved for dismissal and discovery proceeded. Because it became difficult to find an attorney willing to accept appointment to represent plaintiffs in that action, the case proceeded slowly. Finally, on February 13, 1979, Frederick M. Krieger, Esquire, of the law firm of Morgan, Lewis and Bockius, was appointed counsel for the plaintiffs.

On April 20, 1979, Mr. Krieger informed the court that Holly had disappeared and, therefore, requested a severance of the

3. The money damage claim is brought pursuant to 28 U.S.C. § 2202.

4. *Holly v. Rapone*, No. 78–689 (E.D.Pa., filed March 21, 1978).

cases.[5] This was done on May 18, 1979, and Holly's case was dismissed without prejudice in accordance with Rule 41(b) of the Federal Rules of Civil Procedure.

On May 31, 1979, Holly petitioned the Court to reinstate his lawsuit. For procedural convenience, I denied the petition and instructed the plaintiff to file a new complaint. It is this new complaint that is now before me.

*Facts*

■ This complaint was drafted without the assistance of counsel and must, therefore, be held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). I have accepted, as I must, the allegations of the complaint as true, *Miree v. DeKalb County*, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977), and have construed the complaint liberally in a light most favorable to the plaintiff. *Jennings v. Shuman*, 567 F.2d 1213, 1216 (3d Cir. 1977). Additional facts have also been taken from the uncontested "Answers of Defendants to Plaintiff's Interrogatories" filed in the earlier action.[6]

On December 27, 1977, the plaintiff was arrested for an alleged violation of the Pennsylvania Criminal Code. As Holly was unable to secure bail, he was committed to the Delaware County Prison at 8:00 P.M. Upon his arrival, Holly informed the Intake Officer that he was a heroin addict, that his "last shot of dope" had been at 12:00 P.M. that day, and that he required a doctor. The plaintiff added that his drug involvement could be verified by checking his criminal record and by calling drug programs that he "at one time or another was involved with." In response to the plaintiff's request, the Intake Officer, who is not a defendant in this action, informed Holly that there was no methadone program for drug addicts, but that the plaintiff would be seen by paramedics.

Holly states that on December 28, 1977, he suffered from vomiting, profuse perspiration, severe body pains, and "became disarranged mentally." The Intake Officer denied his request to contact either Warden Rapone or a prison doctor because of the hour of the day, 8:00 P.M.

Instead, on December 29, 1977, less than 48 hours after his confinement, the plaintiff was given a physical examination at the prison hospital by a defendant paramedic, Frank Green. As a result of the examination, Holly was given the non-prescription drugs, Mylanta and Vistaril, for his withdrawal symptoms. He was told by the paramedic that methadone could only be prescribed by a doctor and that the plaintiff would be placed on the doctor's waiting list. By January 2, 1978, the plaintiff had regained his appetite.

On the same day, January 2, 1978, Holly complained of headaches and requested an eye examination. This request was a prerequisite for the replacement of his eyeglasses, allegedly damaged during his arrest. On January 24, 1978, Holly fell on ice-covered steps, allegedly, as a direct result of the absence of eyeglasses. Later that day, the plaintiff was examined by paramedic Green. Although Holly requested that x-rays be taken, the paramedic instead prescribed hot soaks and Tylenol for muscle strain and contusions. The plaintiff complains that he could not apply the hot soaks to himself and that, as a result, he sustained permanent injury to his back.

*Discussion*

The plaintiff has not stated a claim upon which declaratory or injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 can be granted. The facts and pleadings have not satisfied the required standard of "deliberate indifference to serious medical needs of prisoners" in order to sustain the eighth and fourteenth amendment claims of the plaintiff. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

---

**5.** Mr. Krieger's appointment was restricted to Cataleno only.

**6.** *Holly v. Rapone*, No. 78–689, Document 11, (E.D.Pa. filed March 21, 1978).

### Pennsylvania Law Does Not Require A Prison To Administer Methadone

■ It is well established that a pretrial detainee is entitled to medical attention and a defendant acting under "color of law" who unreasonably refuses to provide medical care is liable under a 42 U.S.C. § 1983 action. Id. at 99; *Norris v. Frame*, 585 F.2d 1183 (3d Cir. 1978). In addition, the Court of Appeals for the Third Circuit has recently held that a cause of action does exist where the plaintiff did not receive any medical treatment for his heroin withdrawal until 11 days after his incarceration. *U. S. v. Fayette County*, No. 76–2492 (3d Cir. June 15, 1979).

■ In the instant case, Holly was provided a physical examination and medical treatment at the prison hospital by trained medical personnel within 48 hours of his confinement. This prison procedure, therefore, satisfies the Pennsylvania law requiring that prisoners receive medical treatment within 48 hours of their admission to the institution.[7]

■ In addition, it is clear that there is no constitutional right to receive methadone, and the county is under no obligation to provide it. *Norris v. Frame, supra,* 585 F.2d at 1188. Methadone is a carefully controlled substance which may only be dispensed to qualifying recipients, and then only by approved facilities. 251 C.F.R. § 310.505; 4 P.Code § 263. The Pennsylvania law requiring that addicts receive "medical detoxification," 71 P.S. § 1690.-106(a),[8] does not require the establishment of methadone maintenance facilities at corrective institutions. *Norris v. Frame, supra* at 1188; *U. S. v. Fayette County, supra,* slip op. at 4. Thus, the defendants were under no obligation to provide methadone to their prisoners. Consequently, neither a prisoner nor a pretrial detainee can compel county prison officials to provide him with the drug. *Norris v. Frame, supra* at 1188.

### The Criteria "Deliberate Indifference To Serious Medical Needs Of Prisoners" Has Not Been Satisfied

■ Federal courts are reluctant to interfere in matters relating to the internal administration of state correctional facilities because of the difficult task confronting prison officials. Judicial restraint is indicated unless a prison practice offends a constitutional guarantee. *Procunier v. Martinez,* 416 U.S. 396, 405–06, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Norris v. Frame, supra* at 1187.

In *West v. Keve,* 571 F.2d 158 (3d Cir. 1978), the Circuit Court expressed the applicable standard in dealing with prisoner medical situations:

A state is under a duty to provide adequate medical care to those it is punishing by incarceration, and, although the constitutional standard for adequate medical treatment has not been fully developed . . . the Supreme Court has stated that "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment proscription against cruel and unusual punishment.

7. 61 P.S. § 1 provides as follows:
Whenever any person shall be sentenced to serve a term in any of the jails or penal institutions of this Commonwealth, and shall be admitted to any such jail or penal institution, such person shall, within forty-eight hours after his admission, be examined as to his physical condition and also as to his mental condition. A record of the result of such examination shall be kept as a part of the records of such jail or penal institution.
37 Pa.Code § 95.232(a)(1) provides:
(a) Minimum requirements. The following are the minimum requirements applicable for medical and health services:
(1) All persons admitted to jail shall, within 48 hours after his (sic) admission, be examined as to his physical condition and also as to his mental condition. A record of the result of such examination shall be kept as a part of the permanent jail documents. Reference should be made to act of May 10, 1921 P.L. (61 P.S. §§ 1–4).

8. 71 P.S. § 1690.106(a) provides, in pertinent part,
"Medical detoxification and treatment shall be provided for persons physically dependent upon alcohol or controlled substances at correctional institutions and juvenile detention facilities or in available appropriate medical facilities."

*Id.* at 161, quoting *Estelle v. Gamble,* 429 U.S. 97, 103–04, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). (Emphasis added).

This standard has been declared to be two-pronged, requiring (1) deliberate indifference on the part of prison officials, and (2) that the prisoner's medical needs be serious. *West v. Keve, supra* at 161.

■ However, every claim by a prisoner that he has not received adequate medical treatment, does not, in and of itself, indicate a violation of the eighth amendment. For "deliberate indifference" to be found, *Estelle* requires that the prison personnel must offend the "evolving standards of decency." 429 U.S. at 106, 97 S.Ct. 285.

The facts in the instant complaint indicate that prison officials did provide medical treatment within 24 hours of the withdrawal symptoms and within 48 hours after Holly's admission to the prison. In addition, non-prescription drugs Mylanta and Vistaril were given by medical personnel for plaintiff's withdrawal ailments. The defendant paramedic, trained in medical procedures, was certainly capable of evaluating the plaintiff's needs for detoxification.

Subsequently, when Holly injured his back, prison officials again responded with treatment. X-rays and other diagnostic techniques, as pointed out in *Estelle,* are discretionary in such a case. 429 U.S. at 98, 97 S.Ct. 285.

Therefore, I conclude that the plaintiff's allegations have not approached the repugnancy of those acts prescribed by the eighth amendment which support such a cause of action.[9] In denying Holly's eighth amend-

ment claim, I remain consistent with the ruling, "(w)here the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim." *Roach v. Kligman,* 412 F.Supp. 521, 525 (E.D.Pa.1976), *quoted approvingly in Norris v. Frame, supra,* 585 F.2d at 1185.

Accordingly, the first prong of the *Estelle* test is not satisfied, and, consequently, a claim of medical maltreatment is insufficient to support a § 1983 claim. Thus, assuming *arguendo,* that the plaintiff has suffered a serious injury sufficient to satisfy the second prong of the *Estelle* standard, Holly's complaint still must fail. 429 U.S. at 104, 97 S.Ct. 285.

### Plaintiff Has Not Been Denied Constitutionally Protected Liberties Without Due Process Of Law

■ The plaintiff asserts the denial of his constitutionally guaranteed liberties without due process of law. However, the legitimate state interests of detaining accused persons for trial justify the plaintiff's deprivations. In addition, the plaintiff has received some medical treatment for his ailments. Therefore, Holly has not been "punished" in the constitutional sense and his fourteenth amendment claim must fail.

■ Of course, since Holly was a pretrial detainee at the time of these incidents, his rights rise to a somewhat higher level than simply to be free from "cruel and unusual punishment." He was entitled to be free from any punishment. *See Bell v. Wolfish,* —— U.S. ——, ——, 99 S.Ct. 1861, 1873, 60 L.Ed.2d 447 (1979).[10]

9. *See,* e. g., *Williams v. Vincent,* 508 F.2d 541 (2d Cir. 1974) (doctor's choosing the "easier and less efficacious treatment" of throwing away the prisoner's ear and stitching the stump may be attributable to "deliberate indifference . . . rather than an exercise of professional judgment"); *Thomas v. Pate,* 493 F.2d 151, 158 (7th Cir.), *cert. denied sub nom. Thomas v. Cannon,* 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974) (injection of penicillin with knowledge that prisoner was allergic, and refusal of doctor to treat allergic reaction); *Jones v. Lockhart,* 484 F.2d 1192 (8th Cir. 1973) (refusal of paramedic to provide treatment); *Mar-*

tinez v. Mancusi, 443 F.2d 921 (2d Cir. 1970), cert. denied, 401 U.S. 983, 91 S.Ct. 1202, 28 L.Ed.2d 335 (1971) (prison physician refuses to administer the prescribed pain killer and renders leg surgery unsuccessful by requiring prisoner to stand despite contrary instructions of surgeon).

10. In so holding, the Supreme Court specifically rejected the "compelling interest" test, established by the court below, and followed by the Third Circuit in *Norris v. Frame,* 585 F.2d 1183 (3d Cir. 1978).

A pretrial detainee is attached a peculiar status. He is a citizen not yet convicted of a crime, and yet prohibited from enjoying the full range of freedoms of an unincarcerated citizen. The Supreme Court, in *Wolfish* explains:

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee . . . Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "(w)hether an alternative purpose to which (the restriction) may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned (to it)." (citations omitted) (T)hus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." *Id.* at ——, 99 S.Ct. at 1873–1874.

 In the instant case, the state's interest of insuring that persons accused of crimes are available for trial, justify the limitation of freedom resulting from the pretrial detainee's confinement. *Id.* at ——, 99 S.Ct. 1874. The effective management of the detention facility, once the individual is confined, is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment. *Id.* at ——, 99 S.Ct. 1874.

 Only where a condition or restriction is arbitrary or purposeless may a court infer that the purpose of the governmental action is punishment which may not be constitutionally inflicted upon pretrial detainees. *Id.* at ——, 99 S.Ct. 1874. Thus, not every condition or disability which results in discomfort for the accused can be described as "punishment." The distinction between those measures which may be imposed prior to a determination of guilt, and those punitive measures which may not, have been thoroughly examined in the case of *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). Absent a showing of an express intent of the defendants to punish, the issue is generally determined by examining "whether an alternative purpose to which [the restriction] it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *Id.* at 168–69, 83 S.Ct. at 567–568; see *Flemming v. Nester,* 363 U.S. 603, 607, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960).[11]

 The state has the burden of proving that there existed alternative purposes which may justify these certain deprivations. These purposes include security at the institution, and the needs of orderly prison administration. *Norris v. Frame,* 585 F.2d 1183, 1189 (3d Cir. 1978). In *Norris,* a pretrial detainee had already been receiving methadone as a qualified participant in an approved program prior to his incarceration. The Third Circuit Court of Appeals held that the denial and termination of the plaintiff's prescribed course of medication was not justified by legitimate state interests. *Id.* at 1188. While there is some doubt that *Norris* remains viable in light of *Wolfish,* it is clear that the conduct of the prison officials, in the instant case, did not offend even the more restrictive standard of *Norris.*

 Because no person can compel the state to provide methadone, *Norris v. Frame, supra* at 1189, the distinction between *Norris* and the instant case is obvious. The plaintiff's allegation that he was "at one time or another" enrolled in a drug program is not persuasive to prove a denial of a constitutionally protected liberty. Nor did the plaintiff have a constitutional right to X-ray or other diagnostic techniques which he deemed necessary for his back

11. This standard was again approved and adopted by the Supreme Court in *Bell v. Wolfish,* —— U.S. ——, ——, 99 S.Ct. 1861, 1874, 60 L.Ed.2d 447 (1979).

injury. *Estelle v. Gamble,* 429 U.S. 97, 98, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The prisoner cannot be the ultimate judge of what treatment is necessary. *Fore v. Goodwin,* 407 F.Supp. 1145 (D.C.Va.1976); *Cole v. Williams,* 526 F.2d 588 (2d Cir. 1975). Although there may have been a more efficacious treatment for the plaintiff's medical problems, improper medical treatment has not been deemed sufficient to sustain a § 1983 action. *United States v. County of Philadelphia,* 413 F.2d 84, 87 (3d Cir.) *cert. denied,* 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1969); *Roach v. Kligman,* 412 F.Supp. 521, 525 (E.D.Pa.1976).

The issue of whether an eye examination is an essential medical need worthy of constitutional protection is one of first impression. Prison literature indicates that residents seeking ordinary treatment for eye problems "will generally experience a delay, due to the large number of requests received." *Complaint,* "Exhibit A", p. 21, ¶ 5. Since the plaintiff was bedridden due to a subsequent injury after his request for an eye examination, judicial restraint suggests reluctance to intervene in this aspect of internal prison administration. *Procunier v. Martinez, supra,* 416 U.S. at 405–06, 94 S.Ct. 1800.

 Further, the denial of an eye examination cannot be said to be "punishment" in the constitutional sense of the word. *Bell v. Wolfish, supra* —— U.S. at ——, 99 S.Ct. 1861. The prison's medical policy, that in order to insure the best medical treatment, unsentenced inmates would receive emergency medical needs only, is reasonable. *Complaint,* "Exhibit A", p. 21, ¶ 2. This aspect of internal prison administration is attributable to the uncertain duration in which pretrial detainees would remain in prison. Thus, as there is an "alternative purpose to which the restriction may be rationally connected . . .", *Wolfish, supra* at ——, 99 S.Ct. at 1873–1874, judicial restraint precludes addressing this aspect of internal prison administration. *Main Road v. Aytch,* 522 F.2d 1080 (3d Cir. 1975).

*Defendants May Rely On The Affirmative Defense Of Qualified "Good Faith" Immunity*

 It has been established without question that prison officials and officers are entitled to qualified, rather than absolute immunity, in the good-faith fulfillment of their responsibilities. *Wood v. Strickland,* 420 U.S. 308, 321, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Procunier v. Navarette,* 434 U.S. 555, 561, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). The goal of this immunity is to allow officials to "exercise their discretion without undue timidity." *Wood v. Strickland, supra,* 420 U.S. at 321, 95 S.Ct. at 1000. Nevertheless, the immunity defense would be unavailing if: (1) the constitutional rights allegedly infringed by them were clearly established at the time of their challenged conduct, they knew or should have known of the rights, and they knew or should have known that their conduct deprived the person of the guaranteed liberties, or (2) they acted with the malicious intention to cause a deprivation of the guaranteed rights of that individual. *Procunier v. Navarette, supra* 434 U.S. at 562, 98 S.Ct. 855.

 The application of the first branch to the instant suit initially requires the determination of whether Holly enjoyed a clearly established constitutional right to the requested medical treatment. Since there are no constitutional guarantees for such requests, the prison officials are not denied immunity by the first branch of the *Procunier* test.

Neither are the defendants precluded from their qualified immunity by the second branch of the *Procunier* standards. The plaintiff has not alleged malicious conduct that could override the defendants' claim of qualified immunity. *Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

 While the question of immunity is an affirmative defense and the burden is upon the defendants to come forward with the evidence thereof, *Thompson v. Burke,* 556 F.2d 231 (3d Cir. 1977), there is nothing

in the complaint or otherwise to indicate that Holly would be able to overcome such a defense.

### Conclusion

The plaintiff's complaint must be dismissed. The pleadings do not evidence the requisite "deliberate indifference" to serious medical needs to sustain a claim for cruel and unusual punishment. Nor has the plaintiff pleaded a constitutionally guaranteed liberty to which he is entitled. An additional fatality is the qualified "good faith" immunity enjoyed by the defendants against damage liability. Accordingly, the plaintiff has not stated a claim upon which relief can be granted.