Walter R. JAMES and William J. Hontz, Plaintiffs,

v.

Wayne PRICE, Louis Berge, Willard Bernstein, Harvey Dubin, Albert Falciani, Kyle Sherlock and Joseph Archer, Defendants.

Civ. A. Nos. 82–3184, 82–3831.

United States District Court, D. New Jersey.

Feb. 21, 1985.

---

Susan L. Moreinis, Voorhees, N.J., for plaintiff, Walter R. James.

Ronald William Munson, Bridgeton, N.J., for plaintiff, William J. Hontz.

Irwin I. Kimmelman, Atty. Gen. of New Jersey by George W. Gregory, Deputy Atty. Gen., Trenton, N.J., for defendant, Wayne C. Price.

Charles E. Woolson, Jr., Montano, Summers, Mullen, Manuel & Owens, Westmont, N.J., for defendant, Louis Berge.

Horuvitz, Perlow, Morris & Baker, Bridgeton, N.J., for defendant Willard Bernstein.

Martin, Crawshaw & Mayfield, Westmont, N.J., for defendant Harvey Dubin.

Falciani, DiMuzio, Fletcher & Hoffman, Woodbury, N.J., for defendant Albert Falciani.

Thomas E. Lenahan, Franchino, Lenahan & Cross, Somerville, N.J., for defendant Kyle Sherlock.

Capehart & Scatchard, Moorestown, N.J., for defendant Joseph Archer.

## OPINION

GERRY, District Judge.

These two consolidated actions arise out of a 1981–1982 police investigation of a business venture known as "Dollar Savers Brochures." Dollar Savers, a business owned and operated by plaintiff Walter James, was allegedly to provide low cost advertising for area businesses by producing ad booklets in conjunction with local South Jersey fast food franchises. Plaintiff William J. Hontz was a salesman for Dollar Savers. Beginning sometime in late fall of 1981, local and state police initiated investigations of the business practices of Dollar Savers in order to ascertain whether it was a legitimate enterprise or a "scam" as some complainants had suggested. State court indictments were subsequently returned against both James and Hontz. James was eventually convicted on one count of violating N.J.S.A. 2C:20–9, theft by failure to make required distribution of property received. He was found not guilty on one count of violating N.J.S.A. 2C:20–9, and two counts of violating N.J.S.A. 2C:20–4, theft by deception. Plaintiff Hontz asserts that he has never been convicted of any crime arising out of the Dollar Savers venture. Hontz has not made clear to the court, however, whether he was acquitted after a full trial or whether the charges against him were dropped.

Plaintiff James filed the original complaint in this matter while an inmate at the Salem County Jail. This original action was begun *pro se.* Subsequently, an amended complaint was filed by an attorney on behalf of James. This amended

complaint contained an additional count on behalf of plaintiff William J. Hontz. There has been extensive motion practice directed at the amended complaint. The case was last before the court on October 19, 1984 on summary judgment motions brought by several defendants. These motions were granted in part and denied in part. The complaint then before the court was rather unclear, however, and so the court entered an order stating that all remaining claims would be dismissed if the plaintiffs did not amend their complaint again within 15 days to allege all elements essential to a § 1983 action. Both plaintiffs filed second amended complaints within the time period specified by the court.

This case is presently before the court on motions by defendants Wayne Price, a New Jersey State Police Detective, and Louis Berge, Detective Lieutenant of the Pennsville Police Department, for summary judgment on the second amended complaints filed by Walter James and William Hontz, respectively. Also before the court are motions brought by plaintiffs James and Hontz seeking reconsideration of this court's October 1984 ruling according defendants Price and Berge qualified immunity from liability.

In order to evaluate the force of defendants' arguments in support of their summary judgment motions, it is instructive to examine first the contents of the recently filed second amended complaints. Plaintiff James has submitted a complaint in four counts. Jurisdiction in this court is asserted under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) and (4). It appears that no pendent state claims are alleged. In count I, plaintiff James alleges that defendant Price, under color of state law, maliciously prosecuted him in violation of his civil rights. Count II makes the same allegation against defendant Berge. Apparently these two counts proceed on the theory that the malicious prosecution of James constituted a deprivation of his liberty without due process and consequently is actionable under § 1983. Count III premises liability under § 1983 on a deprivation of property without due process. The plain- tiff avers that the defendants tortiously interfered with his contractual and business relations, resulting in the loss of his property. Finally, count IV alleges a conspiracy to violate § 1983 on behalf of all the defendants, state officers and private individuals alike.

The second amended complaint filed on behalf of plaintiff William Hontz begins by incorporating by reference the allegations contained in the first four counts of co-plaintiff James' complaint. However, Hontz' complaint goes on to include a number of allegations not addressed in James' complaint. For example, Hontz specifically states in count I that the action is brought in part to redress a violation of *state* law. Furthermore, Hontz contends that the defendants, either singularly or in concert, acted to deprive him of rights guaranteed under the First, Fourth, Fifth, Sixth, Eighth, Ninth, Thirteenth and Fourteenth Amendments of the United States Constitution.

With the preceding framework in mind it is now possible to turn to the applicability of the arguments advanced in support of and in opposition to the present motions. As discussed above, the first two counts of James' complaint alleged that his malicious prosecution is actionable under § 1983 as a deprivation of liberty without due process. During the course of prior motion practice in this case, the court determined that, as to defendants Price and Berge, the doctrine of qualified immunity shielded them from § 1983 liability arising out of malicious prosecution. We observed that under the doctrine of *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), a government official performing a discretionary function is shielded by qualified immunity unless his actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738–39. Operating on the assumption that the right to be free from malicious prosecution was not a clearly established right, we found that the

state officers in this case were entitled to rely on the qualified immunity defense. The plaintiffs have petitioned the court to reconsider this ruling. After further reflection, the court has now decided to overturn our prior determination in this case.

In our October 22, 1984 letter opinion at pages 5 and 6, we said: "As *Voytko* [*Voytko v. Ramada Inn of Atlantic City*, 445 F.Supp. 315 (D.N.J.1978)] recognized, the district and circuit courts are sharply divided over the question of whether such a civil right even exists. *Voytko* at 323. In view of this, it cannot be said that the right is clearly established." Upon consideration, the court believes that this conclusion was incorrect. Precisely what is meant by "clearly established" is an elusive question. The Supreme Court has expressly refused to indicate how much case authority is necessary before a right is clearly established. In footnote 32 of *Harlow*, the court said that it "need not define here the circumstances under which the 'state of the law' should be evaluated by reference to the opinions of this Court, of the Courts of Appeals, or of the local District Court." *Harlow*, 457 U.S. at 818 n. 32, 102 S.Ct. at 2739 n. 32, *citing Procunier v. Navarette*, 434 U.S. 555, 565, 98 S.Ct. 855, 861, 55 L.Ed.2d 24 (1978). As recently as October 29, 1984, the Third Circuit acknowledged that lower courts are not informed about how much of a split of authority makes the law sufficiently unclear to mandate the granting of immunity. *The People of Three Mile Island v. Nuclear Regulatory Commissioners*, 747 F.2d 139 at 144 (3d Cir., 1984). In the absence of any such guidance, this court must nonetheless make its own determination of whether the right allegedly violated here was clearly established.

While the *Voytko* decision did refer to a conflict among the circuits about the existence of a constitutional right to be free from malicious prosecution, this conflict is not determinative of the immunity issue in the present case. First of all, *Voytko* went on to say that even though a conflict among the circuits may exist, the issue is settled in the Third Circuit. *Voytko*, 445

F.Supp. at 323. *Voytko* referred to *Jennings v. Shuman*, 567 F.2d 1213 (3d Cir. 1977), and said that the rationale of that case indicates that a cause of action for malicious prosecution would also be cognizable under § 1983. *Voytko*, 445 F.Supp. at 324. Although the *Jennings* court did not squarely confront the issue (because the statute of limitations had run on the malicious prosecution claim), it assumed without questioning that malicious prosecution is a constitutional tort actionable under § 1983. *See, e.g., Jennings*, 567 F.2d at 1220. Secondly, even if *Jennings* is somewhat ambiguous about the existence of this constitutional right, *Voytko* itself explicitly found that a claim for malicious prosecution states an invasion of a substantial liberty interest actionable under § 1983. *Voytko*, 445 F.Supp. at 324. There is no indication that any other district courts within the District of New Jersey have disputed this unambiguous holding of the *Voytko* case.

Although the task of determining whether a right is "clearly established" would be greatly simplified by the presence of appellate court decisions squarely addressing the issue, the court believes that the combination of *Jennings* and *Voytko* forms a sufficient basis for saying that the right is clearly established within the District of New Jersey. Implicit in the Supreme Court's comments in note 32 of *Harlow* is the suggestion that there are circumstances in which the state of the law would be evaluated by reference to the opinions of the local district court. Thus, it is arguable that even in the absence of *Jennings* the district court opinion in *Voytko* alone would be enough to support a finding that the right is clearly established. It would not be unreasonable to expect that state officers of the State of New Jersey would be on notice of published opinions of the United States District Court for the District of New Jersey. Furthermore, a standard acknowledging that an unrefuted district court case may clearly establish a right within that district is a very workable one. By contrast, a holding that one dis-

trict court case is insufficient to establish a right would lead to endless confusion. The courts would then be faced with the task of drawing the line at some larger, though arbitrary, number of cases. Would two cases suffice? three? four? The defendants would never know whether their case would be the one that would tip the scale in favor of a finding that the right allegedly violated was clearly established. Similarly, if the courts were to say that several cases had to recognize the right before it was clearly established, then state officers, despite the existence of one unambiguous district court precedent acknowledging the right, would know that they had a "free bite at the apple"; that is, that they could violate that particular constitutional right without fear of losing their immunity. To permit such officials one or more liability-free violations of a constitutional right would be to undermine the effectiveness of § 1983 suits in deterring abuse of office and providing the injured party with an opportunity for recompense. *See The People of Three Mile Island,* at 143, 145.

In sum, the rationale of *Jennings* and the unambiguous and uncontradicted holding of *Voytko* form a sufficient basis for this court to find that, at least within the District of New Jersey, the right to be free from malicious prosecution is "clearly established." Thus, under *Harlow,* defendants Price and Berge are not entitled to summary judgment on counts I and II of plaintiff James' complaint on the basis of qualified immunity. Insofar as plaintiff Hontz has incorporated the same claims into his complaint by reference, the defendants' motions for summary judgment on these claims must be denied as well.

The next issue requiring consideration is plaintiff James' claim in count III that he was deprived of property without due process when the defendants tortiously interfered with his contractual and business relations. According to the defendants, James cannot be allowed to proceed with his § 1983 action on this basis because the existence of an adequate state remedy precludes this court from finding that due process has been violated. The court's pre-

vious letter opinion did not confront this question since it was unclear at that time whether the plaintiffs intended to pursue deprivation of property without due process as a separate § 1983 claim.

■ It is important to note that count III, unlike counts I and II, states a claim for deprivation of *property* without due process of law. In view of this, the court agrees with the defendants' assertion that we must look to *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and *Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) for the appropriate legal guidelines. *Parratt* states the relevant rule because that case, like count III of the James complaint, involved "no other right, privilege or immunity secured by the Constitution or federal laws other than the Due Process Clause of the Fourteenth Amendment *simpliciter."* *Parratt,* 451 U.S. at 536, 101 S.Ct. at 1913. As the court in *Parratt* emphasized, "[n]othing in that Amendment protects against all deprivations of life, liberty or property by the State. The Fourteenth Amendment protects only against deprivations 'without due process of law.'" *Id.* at 537, 101 S.Ct. at 1914. The question here—like the question in *Parratt*—is whether the tort remedies provided by the state as a means of redress for property deprivations satisfy the requirements of procedural due process. As outlined below, the court believes that the remedies available to plaintiff under New Jersey law are sufficient to satisfy due process.

The defendants have drawn the court's attention to the New Jersey Tort Claims Act, N.J.S.A. 59:1–1 *et seq.* As the legislature itself indicated, the Act was intended to strike a balance between the unfairness and inequity resulting from strict application of the traditional sovereign immunity doctrine and the severe economic burden which total abrogation of that doctrine would impose upon liable public entities. *See* N.J.S.A. 59:1–2. Accordingly, the legislature provided that public entities and public officials shall be liable for their

848

wrongdoing in certain, specified instances. Of particular relevance here, the Act provides that a public employee cannot avail himself of the limitations as to liability and damages "if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct." N.J. S.A. 59:3–14.

The plaintiffs' briefs in opposition to summary judgment do not allege that the remedies provided under the New Jersey Tort Claims Act are unavailable in the instant action. In fact, plaintiff James' theory of liability under count III is cast in such a way as to trigger the applicability of N.J.S.A. 59:3–14. The plaintiff's theory here is that the interference with plaintiff's business and the property loss allegedly experienced by him "were the result of the defendants' malicious prosecution of plaintiff...." (James' Second Amended Complaint at 4.) Thus, if plaintiff is able to prove the allegations underlying count III—that the defendants acted with actual malice—sovereign immunity does not bar recovery under New Jersey law. In light of the existence of this apparently adequate state remedy, the court believes that plaintiff cannot maintain a § 1983 action for deprivation of property without procedural due process. Consequently, the defendants' motion for summary judgment on count III must be granted. Insofar as plaintiff Hontz has incorporated the identical claim in his amended complaint, summary judgment must be entered against him as well.

 The final count of plaintiff James' amended complaint—count IV—states that defendants Dubin and Sherlock entered into a conspiracy with defendants Price and Berge to deprive plaintiff of his constitutional rights. This allegation states a claim for conspiracy under § 1983. The ability to bring a conspiracy claim under § 1983 against private citizens acting in concert with public officials is well-recognized. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Furthermore, a § 1983 conspiracy claim may be premised on a conspiracy to violate *any* constitutional right. In this respect, it differs from an action under § 1985(3), where plaintiff may recover only if his right to equal protection, privileges or immunities have been violated. Consequently, defendant Berge's argument that plaintiffs' conspiracy claim must fail because plaintiffs do not fall within a cognizable class is inapposite. Since this is the only argument advanced in support of defendant Berge's motion for summary judgment on count III of James' complaint, the motion is denied. Again, to the extent that plaintiff Hontz incorporates the conspiracy claim into his complaint, Berge's motion for summary judgment must be denied on this claim as well.

The court notes that while plaintiff Hontz' complaint repeats the allegations contained in counts I–IV of plaintiff James' complaint, it also contains additional allegations. The complaint alleges violations of state law and asserts that this court has pendent jurisdiction over such claims. Furthermore, the complaint alleges a number of substantive constitutional violations. Since the defendants have sought summary judgment only as to the claims premised on conspiracy and on deprivations of property and liberty without due process, the court expresses no view on the viability of Hontz' remaining claims.

The court also notes that pretrial discovery in this case has now been closed for several months. Accordingly, the court directs the parties that any additional pretrial motions should be filed no later than March 11, 1985 so as to be returnable on April 4, 1985. This will permit all remaining claims to proceed to trial promptly.

The attorney for plaintiff James shall submit an order consistent with this opinion.